Clarence SMITH, Plaintiff–Appellee,

v.

BMI, INC., Defendant–Appellant.

No. 91–1293.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 8, 1991.

Decided March 10, 1992.

R. Cordell Funk, Funk & Foster, Hammond, Ind. (argued), for plaintiff-appellee.

James E. McHie, McHie, Myers, McHie & Enslen, Hammond, Ind., Richard J. Antonelli, Buchanan Ingersoll, P.C., Pittsburgh, Pa. (argued), for defendant-appellant.

Before CUMMINGS and RIPPLE, Circuit Judges, and CRABB, District Judge.[1]

CRABB, District Judge.

Clarence Smith, a black, was laid off for economic reasons from his job with BMI, Inc. and was never recalled to work. He filed a complaint alleging that BMI discriminated against him intentionally because of his race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*

After a bench trial held by consent of the parties pursuant to 28 U.S.C. § 636(c), the United States Magistrate Judge issued his findings of fact from the bench. The judge found that although BMI could not be held

**1.** The Hon. Barbara B. Crabb, Chief Judge of the Western District of Wisconsin, is sitting by designation.

liable for discrimination in the discharge of Smith, BMI had violated Title VII by failing to recall Smith. BMI appeals the finding that its failure to recall Smith was discriminatory, contending that the findings of fact were clearly erroneous. We find that they were not and we affirm.

## I. FACTS

The record discloses the following facts about which there is no dispute. Before working for BMI, Smith was employed by a company known as Taylith, whose operation was closing. One day when Gordy Wilson, a BMI supervisor, visited Taylith, Smith and a Taylith co-worker, Morris Smith, asked Wilson whether there would be work for them. Smith believed that BMI would be taking over Taylith's operation. After a few inquiries, Smith received a call telling him to come to BMI's office. Smith filled out an application card with his name, phone number, address, and a contact-person in the event of an emergency, and was put to work.

After Smith had spent approximately two and one-half years on the job, BMI lost several of its projects within the USX Gary Works and laid off twenty-two of its approximately twenty-six BMI general laborers between January and July 1988. In determining which of the general laborers should be laid off, BMI considered how many different operations a particular general laborer had experience with, and the laborer's general reliability, punctuality, absenteeism, and availability for work. Smith was laid off on July 12, 1988 and was the nineteenth general laborer to be laid off. Of the BMI general laborers laid off before Smith, none were black, most were white, and the rest were Hispanic. Smith was considered to be a good or average employee whom BMI would have hired again. Smith was never recalled.

The magistrate judge made the following findings with respect to events subsequent to Smith's layoff. Smith notified BMI secretaries of his continued interest in employment. He filed a complaint with the Gary Human Relations Committee in July 1988 and, at the September 1988 fact-finding conference, indicated a willingness to return to work. Morris Smith, an employee of BMI, suggested to Douglas White that Smith be rehired as a possible solution for the lack of individuals showing up for work, but he was not rehired.

BMI lacked a seniority system by which employees could be recalled. Subsequent to Smith's layoff, BMI hired or rehired four white men: Jim Piunti, Ron York, William Piunti, and Charles Pendley. BMI's current crew consists of one black person, Morris Smith; two white men, William Piunti and Charles Pendley; and one Hispanic, John Garcia. BMI replaces the white employees who leave with other white employees.

## II. ANALYSIS

The trial court's finding that BMI discriminated against Smith because of his race may be overturned only if it is shown to be clearly erroneous, and " 'due regard shall be given to the opportunity of the trial court to judge of the credibility of witnesses.' " *Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quoting Fed.R.Civ.P. 52(a)). Moreover, when findings of fact hinge on the credibility of witnesses, deference to the trial judge demands greater significance because of the judge's ability to take note of variations in demeanor and tone of voice. *Id.* at 575, 105 S.Ct. at 1512. "Clearly erroneous" is a high standard to meet; the challenger must convince the reviewing court that a mistake has been made. *McCluney v. Jos. Schlitz Brewing Co.*, 728 F.2d 924, 927 (7th Cir.1984) (quoting *Lee v. National Can Corp.*, 699 F.2d 932, 936 (7th Cir.1983), *cert. denied*, 464 U.S. 845, 104 S.Ct. 148, 78 L.Ed.2d 138 (1983)).

In a Title VII disparate treatment case such as this one, the allocations of burdens of proof are well delineated. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The plaintiff carries the initial burden of proving by a preponderance of the evidence the prima facie case of discrimination. The plaintiff must show that " '(i) he belongs to

a minority; (ii) he applied and was qualified for a job for which the employer was seeking applicants; (iii) despite his qualifications he was rejected; and (iv) after his rejection, the position remained open and the employer continued to seek applicants from persons of plaintiff's qualifications.'" *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253 n. 6, 101 S.Ct. 1089, 1094 n. 6, 67 L.Ed.2d 207 (1981) (quoting *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824). The prima facie case allows the factfinder to draw an inference of discrimination, which a defendant can rebut only by articulating a legitimate, non-discriminatory reason for the employee's rejection. *Id.* If the defendant succeeds, the plaintiff has the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were a pretext for discrimination. *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. at 1825. "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093.

■ The magistrate judge found that Smith had established a prima facie case of discrimination for BMI's failure to recall him, and that BMI had articulated two non-discriminatory reasons: its lack of a seniority system for recalling employees and Smith's failure to request a job. Smith's task was to demonstrate by a preponderance of the evidence that BMI's stated reasons were pretextual. A pretext may be shown "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095.

The magistrate judge concluded that Smith had met his burden of proving that BMI's reasons for not rehiring him were pretextual. The judge considered the following factors persuasive: 1) BMI's actions in hiring four white employees after Smith's layoff; 2) Smith's actions in notifying BMI secretaries of his continued interest in employment, in filing a complaint with the Gary Human Relations Committee, and in expressing a willingness at the fact-finding conference to return to work; 3) Morris Smith's suggestion to a BMI supervisor that Smith be rehired; 4) the fact that there were only two black employees out of 28 labor gang employees working two job assignments; 5) the fact that BMI's current work crew consists of one black employee, one Hispanic employee, and two white employees, and a white employee is always replaced with another white employee; and 6) Smith's testimony that he never moved or changed his telephone number.[2]

BMI's challenges to these factual findings amount to no more than an assertion that it would have found differently had it been sitting as the trier of fact. It places great weight on Smith's failure to make a proper application, arguing that the only way this could be done was by seeking out a supervisor or asking about job openings. The magistrate judge was justified in finding that the "lack of a proper application" was an unconvincing reason for not hiring Smith. He had evidentiary support for his finding that Smith did enough to let BMI know of his interest in re-employment from Smith's inquiries of the supervisors' secretaries whether work was available, and his complaint with the Gary Human Relations Commission. The magistrate was acting well within his discretion in concluding that BMI was aware of Smith's desire to work for BMI again.

BMI makes much of Smith's failure to make a proper application because he did not speak to one of the two company executives about a job. Its arguments would be stronger if it were able to point to a systematic hiring practice of which applicants were made aware. *Cf. Box v. A & P Tea Co.,* 772 F.2d 1372, 1377 (7th Cir.1985) ("When an employer uses a promotion sys-

---

**2.** BMI argues that the "fact" about the makeup of the workforce is wrong, and that there were two additional black workers in 1988, one of whom was injured and could not work part of the year, and both of whom quit that year.

tem in which employees do not apply for promotions but rather are sought out by managers, the application requirement of the prima facie case is loosened somewhat.").

BMI argues that the magistrate judge "ignored uncontradicted testimony" and that the judge's conclusions lack support. The only one of the magistrate judge's findings that appears to lack support is the racial makeup of the labor gang employees. It is not this court's role to correct factual errors unless the errors are egregious. This particular finding is not so egregious as to require a remand. Even without it, the evidence is sufficient to support the magistrate judge's finding that BMI's proffered reasons for not re-hiring Smith were a pretext for race discrimination. We need not second-guess his findings because we are not convinced that a clear error has been committed.

For the foregoing reasons, the judgment of the district court is AFFIRMED.