**William M. GRANT, Plaintiff,**

v.

**HARCOURT BRACE & COMPANY, et al., Defendants.**

No. C2–96–533.

United States District Court, S.D. Ohio, Eastern Division.

July 6, 1998.

John Spenceley Marshall, Columbus, OH, for Plaintiff.

Matthew W. Lampe, Steven T. Catlett, Columbus, OH, for Defendant.

### MEMORANDUM AND ORDER

MARBLEY, District Judge.

## I. INTRODUCTION

This matter is before the Court on Defendant's Motion for Summary Judgment (doc. 27). The matter has been fully briefed, oral argument on the Motion was heard on March 6, 1998, and the Motion is ripe for decision.

## II. BACKGROUND

Plaintiff, William M. Grant ("Grant"), was a sales representative of textbooks for Defendant, Harcourt Brace & Co. ("Harcourt") from 1986 to late October, 1995, when he was laid off during a reduction in force. In November, 1995 a Harcourt sales representative resigned his position, and, ultimately, Plaintiff was not re-hired into the position. Plaintiff brought suit against Harcourt, and the claims which now remain[1] are for a discriminatory failure to re-hire him on the basis of his age in violation of both the federal Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, et seq., and the state analogue, Chapter 4112 of the Ohio Revised Code. Defendant Harcourt has filed a Motion for Summary Judgment on these two remaining claims.

## III. UNDISPUTED FACTS

Harcourt, through its College Publishers Division, sells text books to various institutions such as colleges, university and vocational technical schools. Harcourt employs two types of sales representatives: (1) college sales representatives; and (2) vocational technical sales representatives.

In 1986, Harcourt hired Grant, who was then 48 years old, as a college sales representative. Grant had been selling textbooks from 1965 to 1983, when he lost his 17 year job with Wiley & Sons through a massive layoff. When Harcourt hired Grant in 1986, his territory was Central and Southeastern Ohio, the same territory in which Grant sold for Wiley & Sons. Grant's performance appraisals as a traditional college sales representative for Harcourt show that he was consistently rated from good to superior.

In 1990, Harcourt transferred Plaintiff to a vo-tech representative position, selling the same line of textbooks to vocational and technical schools rather than traditional colleges and universities. Grant's territory expanded in this new position to the Mid-western third of the United States. Grant's vo-tech performance evaluations for Harcourt revealed that he met or exceeded company expectations in all categories.

In 1994, Harcourt underwent a reduction in force in which it laid off one of its three votech representatives based upon seniority.

---

1. Plaintiff initially filed suit against both Harcourt and Harcourt General, its parent company. The six claims brought included wrongful termination, discriminatory failure to rehire and discriminatory retaliation under both state and federal law. Plaintiff subsequently dismissed Harcourt General as a Defendant in this case, and then later dismissed his retaliation claims and wrongful termination claims under both state and federal law.

Following the 1994 reduction in force, Harcourt consolidated its sales force, and Plaintiff began reporting to Lee Sutherlin, one of Harcourt's Regional Vice Presidents, who was 31 years old. Of the two remaining vo-tech sales representatives at Harcourt in the College Publishers Division, Grant's salary was the lowest, but his sales were the highest. In the Fall of 1995, however, Harcourt underwent a second reduction in force, again laying off one of its vo-tech representatives based upon seniority. Since Plaintiff had less overall seniority, and less seniority within his geographic region compared to the other remaining vo-tech representative, he had less seniority within the vo-tech job function. Grant was informed of his lay-off on October 27, 1995.

In early November 1995, the college sales representative in Grant's old territory of Central and Southeastern Ohio announced his resignation. At that time, the college sales representatives reported to district managers who in turn reported to regional vice presidents. The representative in that particular position reported to Stephanie Surfus, the District Manager for Michigan and Ohio, who in turn reported to Lee Sutherlin. After learning of the representative's announced resignation in November 1995, Ms. Surfus instructed Harcourt's Human Resource Department to run an advertisement for applicants to fill the position.

When Plaintiff learned that the position was becoming vacant, he wrote a letter on November 10, 1995 to Ms. Surfus expressing his interest in "[taking over] the territory on a contract basis for the balance of the academic year, i.e., June 1st." Plaintiff added, "If you would be interested in such an arrangement, please let me know." Ms. Surfus received Grant's letter of November 10 shortly thereafter, and drafted a response letter stating:

> "Thank you for offering to fill the Columbus territory through June as a contract employee. I am in the process of interviewing and hope to have a permanent employee in place by the first of the year. I will keep your offer in mind in case I am unable to find a suitable candidate by then."

Ms. Surfus' letter was dated November 15, 1995, but it is undisputed that she did not mail the letter until November 28, 1995, almost two weeks later. Grant received the letter on December 2, 1995.

It is also undisputed that Grant understood that Surfus' desire to fill the position "by the first of the year" was so that the new person could attend the National Sales Meeting in January 1996. According to the parties, that meeting, which typically lasts from 6 to 10 days, has always been mandatory for sales representatives and is "extremely crucial" to the job.

On November 14, 1995, Grant left a voice mail message inquiring about Harcourt's hiring process for the vacant position with John Floyd, Harcourt's Vice President of Human Resources. Grant does not specifically recall whether he told Floyd he was interested in the position on a full time basis or a contract basis in the voice mail message. Floyd did not return Grant's call. On November 15, 1995, Grant sent a courtesy copy of his November 10th letter to Lee Sutherlin. Sutherlin saw the draft of the response letter dated November 15 from Surfus to Grant and approved the letter. Neither Surfus nor Sutherlin had an explanation for why the letter was not mailed until November 28, 1995, although Surfus did note that she was on a five day Thanksgiving break during part of that delay.

During this period, Grant and his counsel were attempting to negotiate a separation package with Harcourt. After receiving the letter from Surfus on December 2, 1995, Grant asked his counsel to contact Mr. Floyd to convey his interest in filling the position on a permanent basis. It is undisputed that Grant's counsel did not contact Floyd until December 20, 1995.

In the meantime, Ms. Surfus conducted more than 10 substantive telephone interviews of applicants who had submitted resumes in response to Harcourt's advertisement. These interviews lasted between 30 and 60 minutes each, after which the list of candidates was reduced to 8, whom Surfus interviewed in person on December 4 and 5, 1995. Based on these interviews, and some

follow up telephone interviewing of the 8 candidates, Surfus selected four finalists for a second round of face to face interviews to take place on December 21 and 22, 1995.

On December 20, Grant's counsel did contact Floyd and inform him that Grant was interested in filling the vacant position on a permanent basis. On the following day, December 21, 1995, Floyd returned Plaintiff's attorney call at 4:02 p.m. (CST), which was 5:02 p.m (EST), where Plaintiff's attorney was located. Floyd left a message on the voice mail system of Grant's counsel indicating that Harcourt would be happy to consider Plaintiff for the vacant position and that Surfus was conducting interviews at the Holiday Inn in Worthington in Columbus the following day, Friday, December 22. Floyd also stated that Plaintiff should call Surfus on the 21st of 22nd at the Holiday Inn to set up an interview time. Floyd's voice mail message was transcribed by an employee in Plaintiff's attorney's office and that transcript is part of the record.

On December 22, 1995, Surfus conducted the second round of face to face interviews as scheduled. Laura Plotts, a 27 year old with no prior wholesale experience, was selected as the final candidate for the position. Despite the fact that Plaintiff was in Columbus on December 21 and 22, 1995, he neither called Surfus or showed up at the Holiday Inn for an interview. Instead, on December 25, 1995, Grant flew to Oregon to visit his son for the Holidays and flew there on a round-trip airline ticket with a return date after the first of the year. Plaintiff did not receive the message that Surfus was conducting interviews on Friday, December 22, 1998 from his attorney because his attorney apparently did not retrieve the message until December 26, 1995. It is undisputed, however, that Floyd's message was left with Grant's counsel's office on December 21 at 5:02 p.m., and that Grant's counsel was in his office on Friday, December 22, 1995.

On or about December 26, 1995, Plaintiff's attorney retrieved John Floyd's December 21, voice mail message and called Plaintiff in Oregon to tell him that Stephanie Surfus was conducting interviews for the position and that he should contact her as soon as possible. On that same date, following his conversation with his attorney, Grant faxed a letter to Surfus (through another Harcourt employee) informing Surfus of his understanding that she "would be conducting interviews for the vacant Columbus, Ohio based territory on Friday (12/29), at the Holiday Inn in Worthington, Ohio." In addition he added that he would be "in Oregon for the Holidays until 1/6/96" and would "be unable to schedule an interview for this coming Friday." However, he added, he would "be available for interviewing after 1/8/96."

After receiving Grant's faxed message, Surfus and Sutherlin discussed the letter, and Sutherlin then explained to John Floyd from Human Resources that they were in the final stages of hiring an employee for the vacant position as a result of the face to face interviews. He asked Floyd if they could continue with the current hiring plan which was to hire a replacement by the first of the year in light of Grant's faxed message. After consultation with counsel, Floyd gave Sutherlin the go-ahead, and on December 27 through 28, 1995, Sutherlin interviewed Laura Plotts in person in St. Louis and hired her for the position.

Neither Sutherlin nor Surfus did anything to correct Grant's misunderstanding about the interview dates and Surfus admits that she did not talk to Floyd or try to contact Grant because "it wasn't her responsibility." Grant claims that Surfus could have interviewed him by phone between December 26 and December 29, but Surfus claims she would not have because "that is not in my hiring methodology".

Grant later learned that he was not going to be hired for the position in a phone conversation with Surfus in early January. He called to ask her the status of the vacant position, and she allegedly said that she had already hired a "young lady."

## IV. DISCUSSION

### A. Plaintiff Fails to Establish a Prima Facie Case

In bringing a discrimination claim, Plaintiff must establish a *prima facie* case of discrimination. Plaintiff bears the burden of proof in

establishing a *prima facie* case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 502–03, 508–10 n. 3, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Plaintiff can establish a *prima facie* case by direct or indirect evidence. In the absence of direct evidence of discrimination, Plaintiff may meet his burden by demonstrating inferentially that he was a victim of intentional discrimination. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817; *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

Since Plaintiff in this case has no direct evidence of intentional discrimination, he relies solely upon indirect evidence. Thus, he must initially present evidence which creates a rebuttable presumption of discrimination. Ordinarily, to establish a *prima facie* case of intentional discrimination based on failure to hire, Plaintiff must establish each of the following elements: (1) he is a member of the protected class; (2) he was qualified and applied for the position; (3) despite his qualifications, he was denied the position; and (4) the employer filled the position with someone who is younger. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817 (setting forth criteria for a plaintiff who brings an illegal discharge claim under Title VII); *Burdine*, 450 U.S. at 256, 101 S.Ct. 1089 (applying the *McDonnell Douglas* factors to discriminatory failure to promote under Title VII).

These requirements apply equally to one who brings claims under the ADEA and Ohio state anti-discrimination law. *See Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir.1992) ("The McDonnell Douglas/Burdine formula is the evidentiary framework applicable not only to claims brought under Title VII, but also to claims under ADEA,

... [and] to claims of discrimination under Ohio state law..." (citations omitted)). Thus, this Court's analysis of the merits of both of Plaintiff's remaining claims will be identical.

Defendant first argues that Plaintiff cannot prove a prima facie case because Plaintiff did not "apply" for the vacant position, and therefore, was not rejected for the position. Defendant argues that Plaintiff did not submit to the application process, which included, as the primary component, an interview with Stephanie Surfus, the manager who was to supervise the successful candidate. Therefore, Defendant argues that no inference of discrimination can reasonably arise from the fact that Plaintiff did not get the job, because he failed to apply by interviewing for the position.

The second prong of the *prima facie* test, which requires proof that a plaintiff actually applied for the position allegedly wrongly denied, "reflects standing-like concerns." *Loyd v. Phillips Brothers, Inc.*, 25 F.3d 518, 523 (7th Cir.1994). More particularly, as the Seventh Circuit stated in *Loyd*:

> it closes the causal gap between the employer's decisionmaking process and the complained-of condition of the employee, thus allowing a tentative inference of bad motive on the employer's part.

*Id.* Both the Sixth Circuit and district courts within this Circuit have held that a plaintiff's failure to apply for a position allegedly wrongly denied is fatal to a subsequent claim of discriminatory failure to hire under either Title VII or ADEA. *See Wanger v. G.A. Gray Co.*, 872 F.2d 142 (6th Cir.1989) (affirming district court's holding that the plaintiff's failure to apply for an available position with the defendant, his former employer, is fatal to his ADEA claim).[2]

---

2. *See also, Haggerty v. Lorain Products, Div. Of Reliance Comm/Tec Corp.*, No. 90–3220, (6th Cir. Dec.20, 1990), 1990 WL 212568 (letter from employee released due to a reduction in force to former supervisor at company insufficient to fulfill the application requirement of a *prima facie* case under the ADEA); *Stokes v. Unisys Corp.*, No. 91–CV–40257–FL, (E.D.Mich.1992), 1992 WL 51837 (plaintiff failed to offer any evidence that he sought the alleged available position, formally or otherwise); *Massi v. Blue Cross &*

*Blue Shield Mutual of Ohio*, 765 F.Supp. 904 (N.D.Ohio 1991) (when the employer had a formal system of posting job openings and allowing employees to apply for them, the employee's failure to apply for a position prevents her from establishing a *prima facie* case); *Payne v. Bobbie Brooks, Inc.*, 505 F.Supp. 707 (N.D.Ohio 1980) (because plaintiffs did not apply for a position with defendant, they have failed to establish a *prima facie* case under the disparate treatment theory of Title VII).

However, it is also well-established that the requirements necessary to establish a *prima facie* case are not to be interpreted as a rigid formula, an invariable scheme, or an "inflexible formulation." *See Teamsters,* 431 U.S. at 358, 97 S.Ct. 1843; *see also Phelps v. Yale Security, Inc.,* 986 F.2d 1020 (6th Cir. 1993) ("no fixed, easy formula to prove the circumstances of discrimination"). The "specification ... of the prima facie proof required from [the complainant] is not necessarily applicable in every respect to differing factual situations." *McDonnell Douglas,* 411 U.S. at 802 n. 13, 93 S.Ct. 1817. Indeed, in *Wanger, supra,* the Sixth Circuit required the plaintiff to meet a "modified *McDonnell Douglas* test":

> In order to make out a prima facie case of age discrimination in a failure-to-rehire situation, a plaintiff must ... establish:
>
> (1) that he is a member of the protected age group;
>
> (2) that he is qualified for the rehire or recall position;
>
> (3) that he applied for the available position **or can establish that the employer was otherwise obligated to consider him;** and
>
> (4) that the position went to a younger individual outside the protected class or that other reasonable evidence exists for inferring that he was denied a position because of his age.

*Id.* at 145 (emphasis added). The *Wanger* Court went on to state that "[i]n certain situations, a formal application is not necessary in order to establish a prima facie case of discrimination." *Id.; see also Loyd,* 25 F.3d at 523 ("But, of course, it is not true that the causal gap can never be bridged by something short of the formal submission of an application."). Those situations in which a formal application has not been necessary to establish a *prima facie* case vary, and some were discussed at length in *Wanger.*

■ For example, where a plaintiff established that the employer created an atmosphere in which employees understood that their applying for certain positions was futile, the plaintiff is not required to formally apply if she can establish that but for the employer's discriminatory practices, she would have

applied for a job. *Id.* (citing *Babrocky v. Jewel Food Co. And Retail Meatcutters Union, Local 320,* 773 F.2d 857 (7th Cir.1985)). Also, the application requirement is loosened somewhat where a plaintiff can establish that, as a matter of practice, the employer promotes employees into the positions in question without asking for applications or posting the opening so that employees could apply for the positions. *Id.* at 146 (citing *Box v. A & P Tea Co.,* 772 F.2d 1372 (7th Cir.1985), *cert. denied,* 478 U.S. 1010, 106 S.Ct. 3311, 92 L.Ed.2d 724 (1986)). In such a case, however, "[i]n order for the employee to establish that he or she would have applied for the position if they had been aware of it ... the employee must establish that she had shown more than a mere general interest in the position." *Id.* In addition, if the plaintiff could establish that the employer had a policy of recalling employees that had been laid off, and failed to recall the plaintiff, less than a formal application is adequate. *Id.*

■ Plaintiff has not produced any evidence that participating in the formal application process was futile, that Harcourt hired without taking applications, or that Harcourt had a policy of recalling laid-off employees. While it is evident from *Wanger* that these situations are not the only exceptions where an employee does not have to formally apply for a position before alleging discrimination, the situations are nonetheless "limited." *Id.* As the *Wanger* Court phrased the inquiry in failure-to-rehire cases, Plaintiff must establish that "the employer is under an obligation to consider [him or her] for the position" without a formal application. *Id.* Because the purpose of such a requirement in the *prima facie* test is to allow the inference of discriminatory animus on the part of the employer, courts have summarized the test as:

> Simply stated, a Title VII plaintiff has established a prima facie case when sufficient evidence is offered such that the court can infer that, if the employer's actions remain unexplained, it is more likely than not that such actions were based on impermissible reasons.

EEOC v. Metal Service Co., 892 F.2d 341, 348 (3d Cir.1990) (citing Furnco Construction Corp. v. Waters, 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978)); see also, Payne v. Bobbie Brooks, Inc., 505 F.Supp. 707 (N.D.Ohio 1980) (citing same). Thus, this Court must determine whether Plaintiff has established that Harcourt had an obligation to consider him for the position, or ultimately, whether it can be inferred that Mr. Grant's age was more likely than not the reason for him not being given the position.

The evidence is undisputed that Grant did not fill out an application, or send in a resume in response to the advertisement posted by Harcourt for the position. Plaintiff argues, however, that Harcourt had actual knowledge that he was seeking to fill the position, and also knew that he was qualified. Plaintiff further argues that when an employer has actual knowledge that a qualified applicant is seeking an open position and fails to even consider that applicant, all the elements of a prima facie case are present. In addition, Plaintiff argues that Harcourt's requirements for application were variable and discretionary rather than systematic and announced, and therefore, Plaintiff was excused from compliance with those requirements.

### 1. Actual Knowledge of Grant's Interest in Position

The facts are undisputed that before Harcourt filled the vacant position, the decision makers were aware that Grant sought to fill the position. However, Plaintiff's November 10, 1995 letter to Surfus, which was copied to Sutherlin, merely informed them that he was interested in filling the position on a temporary contract basis. The evidence is undisputed that Surfus considered that offer, rejected it, and informed Grant on December 2, 1995 that she was presently interviewing people to fill the position on a permanent basis by the first of the year. In addition, the evidence reflects that Grant did not inform anyone at Harcourt of his desire to fill the position on a permanent basis until December 20, 1995.

At that point, Harcourt had conducted initial telephone interviews in response to the submitted resumes, initial face-to-face interviews, and was preparing to conduct the final four face-to-face interviews on December 21 and 22, 1995. Even though Plaintiff had not submitted a formal application, Harcourt still responded that it would be "happy" to interview him for the position on December 22, the final day of the final interviews. Plaintiff failed to respond until December 26, when he informed Harcourt that he would be available for an interview only after January 8, 1996.

The evidence demonstrates that the parties understood the interview to be a component of the application process, and, therefore, necessary to be considered for the position. It is undisputed that Plaintiff did not request that Harcourt consider him for the position in the absence of an interview, nor can the inference be drawn from the evidence that Plaintiff expected Harcourt to consider him without an interview. Neither is there evidence in the record that Plaintiff made himself available for a telephone interview out in Oregon where he was vacationing. Based on these facts, Plaintiff must establish that Harcourt was under an obligation to consider him for the position despite his failure to interview or in the absence of the offered interview.

Some courts have held that the failure formally to apply for a job opening will not bar a discrimination plaintiff from establishing a prima facie claim, as long as the plaintiff made every reasonable attempt to convey his interest in the job to the employer. Metal Service Co., 892 F.2d at 348. However, even in Metal Service, the Third Circuit found that a prima facie case was established because, in part, the plaintiffs "followed precisely the procedure established by Metal Service for how a person applies for a job at the company." Id. at 349.

While Grant made reasonable attempts to convey his interest in the position to Harcourt, it cannot be said that Grant followed precisely the procedure established by Harcourt for how a person applies for a job at the company. Rather, Plaintiff failed to submit a resume or application, gave notice of his interest in filling the position on a permanent basis at the "eleventh hour", then requested Harcourt accommodate his vacation schedule and hold off on its hiring decision by interviewing him after January 8, 1996. Given

these facts, Harcourt's actual knowledge that Plaintiff sought the position is not sufficient to establish that it was obligated to consider him in the absence of an interview.

While Plaintiff argues that the requirement to interview for this position was a "sham", and therefore, Harcourt was obligated to consider him without an interview, he adduces no evidence to support his argument. Specifically, Plaintiff produces no evidence that Harcourt did not require interviews of other similarly situated applicants. The only evidence Plaintiff relies upon for this argument is the testimony of Surfus that she once approved a transfer of an existing employee with Harcourt to a position under her supervision by only a telephone interview. However, the transfer of an existing employee is not evidence of one who was "similarly situated" to Plaintiff "in all respects." *See Mitchell,* 964 F.2d at 583.

In fact, the record reflects that the only former employee "similarly situated" to Plaintiff "in all respects" but for his age, who was hired back to Harcourt by Surfus after being laid off during a restructuring was required to interview with Surfus before filling the position. Thus, Plaintiff has produced no evidence that the requirement of an interview for Grant for this position was a sham, and therefore, failed to prove that Harcourt was obligated to consider him without an interview.

### 2. Harcourt's Application Requirements: Variable or Discretionary?

Plaintiff relies upon the cases of *Smith v. BMI, Inc.,* 957 F.2d 462 (7th Cir.1992) and *Loyd v. Phillips Bros., Inc.,* 25 F.3d 518, 523 (7th Cir.1994) to argue that the application requirements of Harcourt were variable and discretionary, and, thus, his compliance with the interview requirement should be excused. However, neither of these cases is analogous to the evidentiary record in this matter.

In *Smith,* despite the plaintiff's failure formally to apply to company executives, the defendant did not prevail because it was unable "to point the court to a systematic hiring practice of which applicants were made aware." *Id.,* 957 F.2d at 464. However, the record in this case demonstrates that Harcourt advertised the position, accepted resumes, and interviewed candidates. Also, there is no evidence in this record similar to that in *Smith* where the employer apparently recalled laid off employees without advertisement, application or interviews. Moreover, as of December 2, 1995, Plaintiff had been individually informed that interviews were taking place, and of Harcourt's timeframe for making the hiring decision.

Similarly, Plaintiff's reliance on *Loyd* is misplaced. In *Loyd,* the company had a policy of hiring from within for the positions in question, and "[t]he foreman would generally fill these positions by approaching eligible company workers in order of seniority; no written applications were required or submitted by new hires from within the company." *Loyd,* 25 F.3d at 521. The foreman, however, would not approach women employees for the positions in question. *Id.* Thus, the plaintiff's failure to apply for the position was excused because she established that had the employer approached her, she would have accepted the offered position. *Id.* at 523.

No evidence comparable to the *Loyd* situation has been offered in this case. The hiring process for this Harcourt position included a city-wide newspaper solicitation of applications and multiple rounds of interviewing. While Plaintiff argues that Defendant's hiring process was discretionary because the interviewer had the power to structure the process for this position any way she wanted, Plaintiff has presented no evidence that Defendant Harcourt structured the process for this position in such a way so as to exclude Plaintiff on account of his age, or that the process was deviated from for a younger applicant. "As far as this record shows, Mr. [Grant] was treated the same as everyone else, and that is all the law requires." *Dabrowski v. Warner-Lambert Co.,* 815 F.2d 1076, 1080 (6th Cir. 1987).

Plaintiff also argues that the *Loyd* situation is a comparable one to his because Harcourt "outreache[d] to a younger applicant and accommodate[d] a younger incumbent while treating an older employee differently."

However, the record does not support his argument. As noted above, the alleged accommodation of a younger incumbent by finalizing a transfer through only a telephone interview is not evidence of a person similarly situated to Plaintiff. *See Mitchell,* 964 F.2d 577.

In addition, the only evidence of Surfus and Harcourt reaching out to a younger former employee who was laid off by the company occurred "many years ago," and was merely to notify the former employee of a vacancy which had come up so that he could be considered for it. In this matter, there is no dispute that Grant was aware of the vacancy soon after it was announced, and that Surfus knew shortly thereafter that Grant knew of the vacancy because she received Grant's November 10, 1995 letter. Finally, the record establishes that there was no conscious effort by Harcourt to rehire laid-off representatives by approaching them individually, and so the hiring practice at Harcourt does not resemble that practice considered in *Loyd.*

In the final analysis, it cannot be said that Plaintiff has presented sufficient evidence such that this Court can infer that, in the absence of an explanation by Harcourt, it is more likely than not that its hiring of another applicant was based on impermissible reasons. Plaintiff has failed to prove that Harcourt was obliged to consider him for the position despite his failure to interview, or in the absence of the offered interview. Therefore, Plaintiff has failed to establish a *prima facie* case under both the ADEA and Ohio state law and his claims must be dismissed.

**B. Plaintiff Fails to Create a Submissible Issue of Pretext**

Assuming, *arguendo*, that Grant has met his *prima facie* case of discrimination, the burden of production, not persuasion, shifts to defendant to articulate a legitimate non-discriminatory reason for its action. *Burdine,* 450 U.S. at 254, 101 S.Ct. 1089; *Wrenn v. Gould,* 808 F.2d 493, 501 (6th Cir.1987) By producing evidence (whether ultimately persuasive or not) of non-discriminatory reasons, defendant can sustain its burden of production, thus placing itself in a better position

than if it had remained silent. *St. Mary's Honor Center,* 509 U.S. at 508–10, 113 S.Ct. 2742. Defendant is not required to prove the absence of a discriminatory motive. *Board of Trustees of Keene State College v. Sweeney,* 439 U.S. 24, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978). Although the burden of production shifts to the defendant, the burden of persuasion always remains with the plaintiff. *Mills v. Ford Motor Co.,* 800 F.2d 635, 639 (6th Cir.1986). Harcourt claims that its legitimate non-discriminatory reason for not re-hiring Grant was his failure to interview for the position, and thus, has satisfied its burden of production.

Since Harcourt has come forward with a nondiscriminatory reason for not re-hiring Grant, the presumption of discrimination is rebutted, and Grant must produce sufficient evidence from which the fact-finder may reasonably reject the employer's explanation. *Burdine,* 450 U.S. at 255–56, 101 S.Ct. 1089; *Manzer v. Diamond Shamrock Chemicals Co.,* 29 F.3d 1078, 1083 (6th Cir.1994).

The ADEA plaintiff at all times carries the ultimate burden of proving that the proffered reasons are pretextual and that the adverse employment action is the product of an intent to discriminate because of the plaintiff's age. *Id.; Galbraith v. Northern Telecom, Inc.,* 944 F.2d 275, 279 (6th Cir. 1991), *cert. denied,* 503 U.S. 945, 112 S.Ct. 1497, 117 L.Ed.2d 637 (1992). Plaintiff may show pretext by demonstrating by a preponderance of the evidence either, "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate his discharge, or (3) that they were insufficient to motivate discharge." *Manzer,* 29 F.3d at 1084.

In making a determination of whether the record demonstrates that a genuine issue of material fact exists with respect to age discrimination, the court should consider all reasonable inferences drawn from the totality of facts, the conglomerate of activities, and the entire web of the circumstances presented by the evidence on the record as a whole. *Id.* at 1303 (quoting *Jeffries v. Harris County Community Action Association,* 425 F.Supp. 1208, 1216 (S.D.Tex.1977), *vacated*

*on other grounds,* 615 F.2d 1025 (5th Cir. 1980); accord *EEOC v. St. Joseph Paper Co.,* 557 F.Supp. 435, 439 (W.D.Tenn.1983)).

 Plaintiff does not argue that the reason proffered by the Defendant has no basis in fact i.e., that it is false, because it is undisputed that Grant did not interview for the position. Rather, Plaintiff attempts to show pretext by demonstrating that the proffered reason—that he failed to interview for the position—was an insufficient basis to motivate the decision not to rehire him, and that a discriminatory reason more likely motivated the decision. Plaintiff relies upon the following evidence to demonstrate pretext and to raise an inference of discriminatory intent:

(1) The discrepancy between the ages and qualifications of the favored applicant and Grant;

(2) The "suspicious circumstances" of the response letter, which was not sent until almost two weeks after it was written;

(3) Plaintiff's claim that the hiring process was discretionary with Harcourt, and that the traditional treatment of applicants was flexible;

(4) Harcourt's "artificial insistence" on a personal interview when a telephone interview would have sufficed, and had sufficed for a younger incumbent in the past;

(5) The "bizarre communications" from Harcourt about the opportunity to interview; i.e., being left voice mail at 5:01 p.m. on the Thursday before a Monday Christmas Holiday informing Grant of interviews the following day;

(6) Harcourt's feigned haste in hiring someone by the first of the year;

(7) Harcourt's refusal to accommodate Grant's Christmas holiday schedule conflict;

(8) Harcourt's questionable selection of Grant during the 1995 reduction-in-force;

(9) Harcourt did not call Grant personally anytime during interview process, but for the voice mail message to his attorney, and in the past, Harcourt had called another laid off younger employee to notify him of a vacancy;

(10) Harcourt's description of the hiree as a "young lady" when asked by Grant after the fact about the status of the position; and

(11) The decision maker at Harcourt for this position, Stephanie Surfus, had previously hired 9 people for Harcourt, 8 of which were under the age of 40(88%).

However, the Court finds that the evidence relied upon by Plaintiff to raise an inference of discriminatory intent and to demonstrate pretext fails to create a submissible issue of fact with respect to pretext for a jury to consider.

First, Plaintiff's statistics on Surfus' hiring decisions are not probative of anything and far from what is required in this Circuit before a Court may allow a jury to infer that Defendant intentionally discriminated. *Allen v. Diebold, Inc.,* 33 F.3d 674, 678 (6th Cir. 1994). Plaintiff's statistical evidence, much like that proffered in *Allen,* does not demonstrate that age played any role in the hiring processes of Surfus. Plaintiff produced no evidence that younger applicants made up less than 88% of the applicant pool, or that Surfus hired younger applicants at a disproportionate rate than older applicants. Furthermore, Plaintiff has failed to produce *any* evidence whatsoever regarding the available applicant pool from which Surfus hired. These deficiencies in Plaintiff's statistical analysis render the evidence incapable of supporting an inference of discrimination. *Id.*

 Second, it is well established in the Sixth Circuit that "isolated and ambiguous comments," such as the "young lady" reference, "are too abstract, in addition to being irrelevant and prejudicial to support a finding of age discrimination." *Phelps v.. Yale Security Inc.,* 986 F.2d 1020, 1025–26 (6th Cir.1993) (citing *Gagne v. Northwestern Nat. Ins. Co.,* 881 F.2d 309, 314 (6th Cir.1989)), *cert. denied,* 510 U.S. 861, 114 S.Ct. 175, 126

L.Ed.2d 135 (1993). In addition, in this case, Surfus' description of the successful applicant as a "young lady" in responding to the Plaintiff's inquiry was not given as the reason for the hiring decision, and is "too weak to raise a reasonable inference of discrimination." *Dungee v. Northeast Foods, Inc.*, 940 F.Supp. 682, 687–88 (D.N.J.1996) (finding same).

Third, the fact that Harcourt did not call Grant personally anytime during the interview process, except for the voice mail message left with his attorney on December 21, 1995, does not raise an inference of age discrimination because Grant fails to produce evidence of younger former employees who were similarly situated being treated differently. *See Dabrowski*, 815 F.2d 1076. While Grant does produce evidence that a younger former employee was called by Harcourt to notify him of a vacancy that arose, there is no dispute that Grant's knowledge of the vacancy is not and was not a material issue in this case. Therefore, if any inference of disparate treatment can be drawn in Plaintiff's favor, it is not an inference which creates an issue of material fact for a jury to decide.

Fourth, while Grant argues that Harcourt's "questionable selection" of him during the 1995 reduction in force goes to show pretext, he produces no evidence which would support his characterization of Grant's selection as "questionable". Furthermore, Grant previously dismissed with prejudice his claim of discriminatory termination based upon his being laid-off during that reduction in force.

Similarly, Plaintiff characterizes Harcourt's timeframe for its hiring decision as "feigned haste", but he produces no evidence to support a determination that the timeframe Harcourt was, in fact, pretext for prohibited discrimination. On the contrary, Plaintiff admits in his deposition that he understood that the National Sales Meeting was driving the timeframe in which Harcourt wanted to fill the position. Similarly, Harcourt's refusal to accommodate Grant's Christmas holiday schedule conflict because it wanted to fill the position by the first of the year, standing by itself, is not probative of discriminatory animus in any respect.

Sixth, Grant characterizes the communications from Harcourt offering him the opportunity to interview as "bizarre," considering that the message was left at 5:01 p.m. on Thursday and the interview was to take place on Friday, the next day. However, the record reflects that the December 21 and 22 dates were selected for the final four interviews prior to Plaintiff notifying Harcourt of his interest in filling the job on a permanent basis. The fact that Plaintiff waited until December 20 to notify Harcourt of his interest in filling the position on a permanent basis is the reason Harcourt was able to give Plaintiff only 24–hours notice for the interview. However, Harcourt cannot be held liable for age discrimination based solely upon Plaintiff's delay in notifying Harcourt of his interest in filling the position.

Again, Grant characterizes Harcourt's insistence on a personal interview as "artificial," but produces no evidence in the form of similarly situated employees being treated differently that would support such an inference. Grant argues that a telephone interview would have sufficed for Grant, because he had worked for the company since 1986. However, the record does not reflect that a telephone interview was ever requested by Grant, nor does it reflect that he ever made himself available for a telephone interview. Finally, as noted above, the fact that a younger, current employee had been transferred into a new position by Stephanie Surfus through only a telephone interview is not probative of disparate treatment based on age. *See Mitchell*, 964 F.2d 577 (must be similarly situated in all respects).

Eighth, Plaintiff claims that the hiring process at Harcourt was discretionary and the traditional treatment of those applicants was flexible. However, this Court finds no such evidence in the record that would support such conclusions and, therefore, his argument fails to demonstrate pretext.

Ninth, while the circumstances of the response letter being sent two weeks after it was dated is certainly "suspicious", taking all inferences in favor of Grant, the suspiciousness of the sending of the letter is in-

**760**

sufficient to raise a inference of age discrimination. The letter was merely informing Defendant that a permanent employee was being sought and that interviews were being conducted. Grant received the letter one week before Harcourt's first round of face-to-face interviews and around a month before the first of the year hiring date. In light of these facts, Grant's complaint about the suspiciousness of the two week delay fails to raise an inference of discriminatory intent or pretext, because he still had sufficient notice and time in which to apply for the position.

■ Finally, Grant relies upon the discrepancy between the ages and qualifications of the favored applicant and himself to demonstrate pretext and to raise an inference of discriminatory intent. However, this exact evidence standing alone has been rejected by the Sixth Circuit as sufficient to create a triable issue of pretext in the ADEA context:

> The evidence presented by Mr. Dabrowski shows little more than that Warner–Lambert hired people younger than Mr. Dabrowski for the positions he wanted. This Court has long recognized that the mere fact that a younger employee or applicant receives better treatment than an older one is insufficient to carry the burden of proof in a case under the Federal Age and Discrimination Act.... and this is true even though 20/20 hindsight indicates that someone else might have been a better choice.

*Dabrowski*, 815 F.2d at 1078–80. Thus, the mere existence of an age and experience differential between the Plaintiff and the successful candidate is legally inadequate to create a jury question of pretext.

### V. CONCLUSION

Plaintiff has failed to proffer legally sufficient evidence that his age was a determining factor in Harcourt's hiring decision. This is especially true in this case since Plaintiff failed to even interview for the position for which the favored applicant was hired. Plaintiff both fails to establish a *prima facie* case and fails to create a triable issue of pretext. Thus, Defendant's Motion for Summary

Judgment is **GRANTED**, and this matter is **DISMISSED**.

**IT IS SO ORDERED.**