[Cite as *Ceglia v. Youngstown State Univ.*, 2015-Ohio-2125.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Nickola Ceglia, | : | |
| Plaintiff-Appellant, | : | |
| | : | No. 14AP-864 |
| v. | : | (Ct. of Cl. No. 2013-00454) |
| Youngstown State University, | : | (ACCELERATED CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N
NUNC PRO TUNC[1]

Rendered on September 1, 2015

*Harrington, Hoppe & Mitchell, Ltd.*, *Patrick K. Wilson*, and *Matthew M. Ries*, for appellant.

*Michael DeWine*, Attorney General, *Randall W. Knutti*, and *Lindsey M. Grant*, for appellee.

APPEAL from the Court of Claims of Ohio

SADLER, J.

{¶ 1} Plaintiff-appellant, Nickola Ceglia, appeals from a judgment of the Court of Claims of Ohio in favor of defendant-appellee, Youngstown State University ("University"). For the reasons that follow, we reverse the judgment in part and affirm in part.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} Appellant is a licensed social worker who received his Master of Social Work ("MSW") in 2006. Appellant began teaching social work as a part-time instructor with

---

[1] This decision replaces, nunc pro tunc, the original decision released June 2, 2015, and is effective as of that date. This decision changes the word "appellant" to "appellee" in the last line of paragraph 49 to correct a clerical error.

the University in 1982.  In 2006, appellant was diagnosed with Multiple Sclerosis and Parkinson's disease, and there is no dispute that the University was aware of appellant's medical diagnosis.  At appellant's request, the University had restricted appellant's class size to 30 students in order to accommodate his medical conditions.  During his lengthy tenure as a part-time instructor with the University, appellant consistently received favorable performance reviews and had never been disciplined.

{¶ 3}  In November 2012, the University posted an opening for a full-time position as an instructor in the Department of Social Work.[2]  The newly-created position was to originate out of the University's Lakeland Community College location, and it was designed to mirror a position currently held by instructor Karla Wyant at the Lorain Community College location.  The starting salary for the new position was $40,000 per year as opposed to the $9,600 salary available to a part-time instructor.

{¶ 4}  At the time of the posting, appellant was 58 years old.  The posting identified the following two minimum qualifications for the position: (1) five years post-MSW work experience, and (2) demonstrated successful teaching experience at the Bachelor of Social Work ("BSW") and MSW levels.  Additional "desired" qualifications included: (1) diverse social work experience with a range of client types and practice settings, (2) supervisory experience, (3) prior experience serving as a social work field instructor, and (4) demonstrated commitment to the social work profession and social work education.  Appellant timely submitted his application for the position.

{¶ 5}  The University established a search committee, chaired by Dr. Dennis Morawski, for the purpose of screening applicants for the position, conducting interviews, and selecting a new instructor.  Other members of the committee included Dr. Shirley Keller, Dr. Melody Hyppolite, and Wyant.  Dean Joseph L. Mosca had final signature authority over the committee's hiring decision.  The committee identified six candidates who met the qualifications for the position, including appellant.  The committee decided to interview the top four candidates for the position, but appellant was not among them. When one of the four selected candidates declined to interview, the committee decided to interview only three candidates.

---

[2] The term "full-time position" is used to refer to a 24-hour-per-week position with benefits.

{¶ 6}   On April 3, 2013, appellant asked Dr. Morawski if the committee had chosen to interview him.   According to appellant, Dr. Morawski told him that the committee focused on the "mid-career" applicants and that he would not receive an interview for the position.   (Appellant's affidavit, ¶ 23.)   Following the interview process, the University offered the position to Michael Madry.   Madry is a licensed social worker in his thirties who had received his masters in 2004 and had been teaching social work for three years.   Madry declined the offer.

{¶ 7}   The University then offered the position to Tami Holcomb-Hathy, a 44-year old social worker who received her MSW in 2002.   There is no dispute that when the University posted the position, Holcomb-Hathy had no classroom teaching experience. When the University interviewed Holcomb-Hathy for the position, she was six weeks into her first semester as a part-time instructor at the University.   Holcomb-Hathy accepted the offer.

{¶ 8}   In early May 2013, appellant asked Dr. Morawski "about the position being given to a much younger candidate."  (Appellant's affidavit, ¶ 24.)  According to appellant, Dr. Morawski reiterated that the committee focused on "mid-career" candidates, and he added that the committee did not want to hire "someone who had been around for a long time."  (Appellant's affidavit, ¶ 24.)  Appellant subsequently refused Dr. Morawski's offer to return to the University as a part-time instructor.

{¶ 9}   On August 5, 2013, appellant filed a complaint alleging that the University discriminated against him on the basis of his age, disability, and perceived disability in violation of R.C. 4112.02.  On July 28, 2014, the University filed a motion for summary judgment arguing that the only reasonable conclusion to be drawn from the evidence was that the members of the committee held an honest belief in their proffered nondiscriminatory reasons for denying appellant the position.  On October 2, 2014, the Court of Claims granted the motion.  The court held that even though appellant had satisfied his prima facie case for age and disability discrimination, the only reasonable conclusion to be drawn from the evidence produced by the University was that each of the members of the search committee honestly believed in their proffered nondiscriminatory reasons for denying appellant the position.

## II. ASSIGNMENT OF ERROR

{¶ 10} Appellant assigns the following as error:

> THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT ON MR. CEGLIA'S AGE AND DISABILITY DISCRIMINATION CLAIMS BECAUSE THE EVIDENCE DEMONSTRATES THAT [the University's] PROFFERED REASONS FOR NOT HIRING HIM ARE PRETEXTS FOR UNLAWFUL DISCRIMINATION.

## III. STANDARD OF REVIEW

{¶ 11} Pursuant to Civ.R. 56(C), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Accordingly, summary judgment is appropriate only under the following circumstances: (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66 (1978).

{¶ 12} "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record before the trial court which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). Once the moving party meets its initial burden, the nonmovant must set forth specific facts demonstrating a genuine issue for trial. *Id.* at 293. Because summary judgment is a procedural device to terminate litigation, courts should award it cautiously after resolving all doubts in favor of the nonmoving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-59 (1992).

{¶ 13} Appellate review of summary judgment is de novo. *Byrd v. Arbors E. Subacute & Rehab. Ctr.*, 10th Dist. No. 14AP-232, 2014-Ohio-3935. When an appellate court reviews a trial court's disposition of a summary judgment motion, it applies the same standard as the trial court and conducts an independent review, without deference

to the trial court's determination. *Id.*, citing *Maust v. Bank One Columbus, N.A.*, 83 Ohio App.3d 103, 107 (10th Dist.1992). We must affirm the trial court's judgment if any of the grounds raised by the movant in the trial court are found to support it, even if the trial court failed to consider those grounds. *Helfrich v. Allstate Ins. Co.*, 10th Dist. No. 12AP-559, 2013-Ohio-4335, ¶ 7, citing *Coventry Twp. v. Ecker*, 101 Ohio App.3d 38, 41-42 (9th Dist.1995).

## IV. LEGAL ANALYSIS

### A. Age Discrimination

{¶ 14} R.C. 4112.02(A) states in part: "It shall be an unlawful discriminatory practice * * * [f]or any employer, because of the * * * age * * * of any person, * * * to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." In general, " 'Ohio courts examine state employment discrimination claims under federal case law interpreting Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e.' " *Morrissette v. DFS Servs., L.L.C.*, 10th Dist. No. 12AP-611, 2013-Ohio-4336, ¶ 14, quoting *Knepper v. Ohio State Univ.*, 10th Dist. No. 10AP-1155, 2011-Ohio-6054, ¶ 10, citing *Coryell v. Bank One Trust Co. N.A.*, 101 Ohio St.3d 175, 2004-Ohio-723.

{¶ 15} "To prevail in an employment discrimination case, a plaintiff must prove discriminatory intent" and may establish such intent through either direct or indirect methods of proof. *Ricker v. John Deere Ins. Co.*, 133 Ohio App.3d 759, 766 (10th Dist.1998), citing *Mauzy v. Kelly Servs., Inc.*, 75 Ohio St.3d 578, 583 (1996). Absent direct evidence of age discrimination, a plaintiff may indirectly establish discriminatory intent using the analysis promulgated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), as adopted by the Supreme Court of Ohio in *Barker v. Scovill, Inc.*, 6 Ohio St.3d 146 (1983), and modified in *Coryell*.

### 1. Direct Evidence

{¶ 16} Direct evidence is evidence that, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions. *Conley v. U.S. Bank Natl. Assn.*, 211 Fed.Appx. 402, 405 (6th Cir.2006), citing *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir.2003). If that evidence is credible, "discriminatory animus may be at least part of an employer's motive, and in the absence

of an alternative, non-discriminatory explanation for that evidence, there exists a genuine issue of material fact suitable for submission to the jury without further analysis by the court." *Norbuta v. Loctite Corp.*, 1 Fed.Appx. 305, 312 (6th Cir.2001). *See also Blalock v. Metals Trades, Inc.*, 775 F.2d 703, 707-12 (6th Cir.1985). If a plaintiff can produce direct evidence of a discriminatory animus, " 'the burden [of production and persuasion] shifts to the employer to prove by a preponderance of the evidence that it would have made the same decision absent the impermissible motive.' " *Skelton v. Sara Lee Corp.*, 249 Fed.Appx. 450, 454 (6th Cir.2007), quoting *Minadeo v. ICI Paints*, 398 F.3d 751, 763 (6th Cir.2005).

{¶ 17} In determining whether the employer's statements constitute direct evidence of age discrimination, the Sixth Circuit cases consider the following four factors:

> (1) whether the statements were made by a decision-maker or by an agent within the scope of his employment; (2) whether the statements were related to the decision-making process; (3) whether the statements were more than merely vague, ambiguous or isolated remarks; and (4) whether they were made proximate in time to the act of termination.

*Krupnic v. Arcadis of U.S., Inc.*, S.D. Ohio No. 2:12-CV-273 (Mar. 13, 2014), citing *Skelton* at 455, citing *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 477-78 (6th Cir.2002) (internal citation omitted). *See also Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325, 1330 (6th Cir.1994).

{¶ 18} In *Tessmer v. Nationwide Life Ins. Co.*, 10th Dist. No. 98AP-1278 (Sept. 30, 1999), this court stated that "[d]iscriminatory comments directed at or relating to the plaintiff have not been found to be vague, ambiguous or isolated and have been found to be sufficient, direct evidence in a discrimination case." *Id.* Appellant's affidavit provides, in relevant part, as follows:

> 23. On or about April 3, 2013, I inquired with Dr. Morawski as to my interview status for the position, and Dr. Morawski responded that the hiring committee was focused on the "mid-career" candidates. At this point, I realized that I was not being considered for the position since I was a 58-year old, late-career professional who had been working in the field of social work for more than 30 years.

24. In early May 2013, I was in the social work department when I again inquired with Dr. Morawski about the position being given to a much younger candidate, and he reiterated that the hiring committee was focused on a "mid-career candidate" and informed me that the hiring committee "did not want someone who had been around for a long time."

{¶ 19} There is no dispute that the remarks appellant attributes to Dr. Morawski are those of a decision-maker as Dr. Morawski was the chairman of the search committee. There is also no question that the remarks are related to the decision-making process inasmuch as Dr. Morawski made the remark about "mid-career" candidates both in response to appellant's question about his "interview status" and in response to his subsequent query "about the position being given to a much younger candidate." (Appellant's affidavit, ¶ 23, 24.) He made the remark about candidates who had not "been around a long time" in direct response to the later query. (Appellant's affidavit, ¶ 24.) It is also clear that Dr. Morawski made each of the remarks at or about the time the University made the hiring decision. Dr. Morawski does not deny telling appellant that the committee was focused on "mid-career" candidates and his deposition testimony suggests that he understands that the term "mid-career candidate" may be used in reference to age.[3]

{¶ 20} Although the Court of Claims acknowledged that the remarks attributed to Dr. Morawski permit a factfinder to reasonably infer that the committee denied appellant the position because of his age, the Court of Claims stated that the remarks do not compel such an inference. As an example, the Court of Claims concluded that it is reasonable to infer from Dr. Morawski's comment about candidates who have not "been around a long time" that the committee was looking for candidates from outside the University.

{¶ 21} Dr. Morawski explained his remarks to appellant as follows:

During the spring of 2013, [appellant] did ask me about the status of the search and how it was progressing. I informed

_____

[3]In his deposition, Dr. Morawski testified on cross-examination as follows:
Q: Did you ever ask Mr. Ceglia about being interviewed for the instructor position?
A: No I don't believe he was ever asked.
Q: Was there a push to look for a mid-career candidate for this instructor position?
A: No. *There was no mention of age*, or anything like that.
(Emphasis added.) (Dr. Morawski deposition, 92.) Dr. Morawski later explained that he had used the term "mid-career" candidates in the context of qualifications and experience. (Dr. Morawski deposition, 129-31.)

> him that we had received applications from many highly qualified mid-career candidates. I used the phrase mid-career to emphasize the fact that the candidates that we were considering all had substantial social work experience. I did not use mid-career in a context to denote age, but rather to convey that the other applicants had qualifications similar to his, and I was including [appellant] within the umbrella of mid-career candidates. I never told [appellant] that the search committee "did not want someone who had been around for a long time" and certainly no member of the search committee made any statements of that nature during any of our meetings or discussions.

(Dr. Morawski affidavit, ¶ 17.)

{¶ 22} Dr. Morawski acknowledges that he made the remark about "mid-career" candidates in response to appellant's question about the ongoing search. According to Dr. Morawski, he considered all of the candidates, including appellant, "mid-career" candidates, even though appellant is substantially older. However, Dr. Morawski does not expressly acknowledge making the same statement to appellant after the University had hired Holcomb-Hathy. If the trier of fact were to accept appellant's affidavit as true, given the context in which Dr. Morawski made the second statement about "mid-career" candidates, it is not reasonable to conclude that Dr. Morawski believed appellant fit that description. Additionally, given the fact that appellant couched his query to Dr. Morawski in terms of age, it is certainly reasonable to conclude that Dr. Morawski was speaking of younger candidates when he remarked that the committee was not looking for candidates who had "been around for a long time." (Appellant's affidavit, ¶ 24.)

{¶ 23} Nevertheless, "[c]omments or remarks that 'require a factfinder to draw further inferences to support a finding of discriminatory animus' do not constitute direct evidence." *Krupnic*, quoting *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 708 (6th Cir.2008). *But see Kohmescher v. Kroger Co.*, 61 Ohio St.3d 501 (1991) (evidence that plaintiff's supervisor stated that he recommended the employer eliminate the plaintiff's position because he was "eligible for (the) retirement window," constitutes direct evidence of age discrimination); *La Pointe v. United Autoworkers Local 600*, 8 F.3d 376, 380 (6th Cir.1993) (supervisor's ageist remarks about "oldtimers" constitute direct evidence of age discrimination even though the comments were not specifically about or directed to the

plaintiff). Accordingly, to the extent that an age bias arises only inferentially from Dr. Morawski's remarks, the Court of Claims court did not err when it concluded that the remarks are not direct evidence of age discrimination.

### 2. Circumstantial Evidence of Discrimination

{¶ 24} "In the absence of direct evidence of discrimination, [the employee] may meet his burden by demonstrating inferentially that he was a victim of intentional discrimination." *Grant v. Harcourt Brace & Co.*, 12 F.Supp.2d 748, 755 (S.D.Ohio 1998), citing *McDonnell Douglas* at 802; *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981). To establish a prima facie case of intentional discrimination based on failure to hire or promote, the employee must establish each of the following elements: (1) he is a member of the protected class, (2) he was qualified and applied for the position, (3) despite his qualifications, he was denied the position, and (4) the employer filled the position with someone who is younger. *Morrissette* at ¶ 36. *See also McDonnell Douglas* at 802 (setting forth criteria for plaintiff who brings an illegal discharge claim under Title VII); *Burdine* at 256 (applying the *McDonnell Douglas* factors to discriminatory failure to promote under Title VII).

{¶ 25} In this case, there is no dispute appellant is substantially older than the other three candidates interviewed by the committee, he met the qualifications for the new position, he was denied an interview for the position, and the University filled the position with a younger person. Thus, it is clear that appellant met his initial burden of proof under the *McDonnell Douglas* standard.

### 3. The Proffered Reasons for the Decision

{¶ 26} Once the employee satisfies his prima facie case for age discrimination under the *McDonnell Douglas* standard, the burden shifts to the employer "to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." *Burdine* at 254. Based on the affidavits of the committee members and other evidence submitted by the University in support of the motion for summary judgment, the University has identified several nondiscriminatory reasons for denying him the opportunity to interview for the position. First, Wyant and Dr. Keller alleged that appellant had crossed boundaries with students by taking them out to a restaurant and socializing with them outside of the

classroom setting.   Second, Wyant had reportedly fielded complaints from some of appellant's former students that appellant had permitted students to forgo a mandatory research paper.   Third, Dr. Keller reportedly heard students complain that appellant gave out "favorable grades" and that he dismissed classes early.   (Dr. Morawski affidavit, ¶ 13.) Fourth, both Wyant and Dr. Hyppolite had heard that appellant had cancelled classes. Finally, one of appellant's references reportedly told Dr. Hyppolite that appellant "is not the best at paperwork."   (Dr. Morawski deposition, ¶ 8.)

{¶ 27} Under the Age Discrimination in Employment Act, " '[a] plaintiff will usually demonstrate pretext by showing that the employer's stated reason for the adverse employment action either (1) has no basis in fact, (2) was not the actual reason, or (3) is insufficient to explain the employer's action.' " *Yurasek v. Crossmark, Inc.*, 54 F.Supp.3d 876 (S.D.Ohio 2014), quoting *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 393 (6th Cir.2008).   "These three categories serve as a 'convenient way' to marshal evidence on the ultimate inquiry of whether the employer took adverse action against the employee 'for the stated reason or not.' "   *Reed v. Am. Cellular, Inc.*, 39 F.Supp.3d 951 (M.D.Tenn.2014), citing *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530 (6th Cir.2012), quoting *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir.2009).   The question at the summary judgment stage is " 'whether the plaintiff has produced evidence from which a jury could reasonably doubt the employer's explanation.' "   *Id.*, citing *Chen* at 420.   To overcome summary judgment, a plaintiff need only produce enough evidence to rebut, but not disprove, defendant's proffered reasons for the adverse employment action.   *Id. Carter v. Toyota Tsusho Am., Inc.*, 529 Fed.Appx. 601, 609 (6th Cir.2013), quoting *Griffin v. Finkbeiner*, 689 F.3d 584, 592 (6th Cir.2012).   "[T]he trier of fact may . . . consider the evidence establishing the plaintiff's prima facie case and inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual." (Internal quotation marks omitted.)   *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000).

{¶ 28} Appellant argues that he produced evidence in opposition to the University's motion for summary judgment which raises a reasonable doubt as to the factual basis and/or sufficiency of many of the proffered reasons for denying him the position.  We agree.

{¶ 29} Appellant's affidavit provides, in relevant part, as follows:

13. * * * On a few occasions between 2010 and 2012, Dr. Dennis Morawski held meetings and cautioned the social work faculty about giving easy grades to students. After the first meeting, *I asked Dr. Morawski if I was one of the instructors whom he believed was too lenient with grades, and Dr. Morawski responded in the negative and informed me that he had no issues with my grades.*

14. Paperwork is not an issue for me at work. I have never been disciplined at [the University] or at any other job for paperwork-related issues. *Nobody at [the University] has ever reprimanded me or otherwise discussed paperwork issues with me since I began teaching there in 1982.*

15. I do not and never have socialized inappropriately with my students outside of class. At the end of each semester, I do take my class out for pizza to celebrate the end of the semester and to discuss the curriculum. This gathering is inclusive of the entire class and is typically at Inner Circle Pizza, which is on [the University] campus and directly next to the building where I taught. * * * *Dr. Morawski and Dr. Shirley Keller as well as other faculty have joined me for some of these gatherings.* Nobody from [the University] has ever raised an issue with me about having pizza with students at the end of the semester.

16. *I also do not have a habit of letting class out early or cancelling class. I very rarely cancel class and only in exigent circumstances. While I am sure I have let class out a few minutes early in my 14 years of teaching, I have kept classes late as well.*

* * *

19. In Fall 2009, Dr. Morawski asked me to teach his Research Methodologies class for Spring 2010 at the Lorain, Ohio campus. I agreed, and Dr. Morawski provided me with a syllabus and other course materials. * * * The class required that the students complete a research paper at the end of the year, so Dr. Morawski gave me a good example of a research paper from his previous class. A true and accurate copy of the example research paper Dr. Morawski gave me is attached hereto as Exhibit 1-4. I required the students to research a topic and complete a research paper based on the example

> paper that Dr. Morawski provided. *As evidence that I never cut the research paper assignment from the course, attached hereto as Exhibits 1-5 and 1-6 are two examples of those research papers that I kept from the course.*

(Emphasis added.)

{¶ 30} At a minimum, evidence that two of the committee members attended some of the events that the committee now cites as a boundary violation raises a genuine factual issue regarding the sufficiency of this proffered justification for denying appellant an interview for the position. Moreover, Dr. Keller testified that the committee did not discuss boundary issues during any of their meetings.

{¶ 31} Dr. Hyppolite testified that she thought that it was Dr. Keller who raised the issue of cancelled classes at the committee meeting. However, Dr. Keller testified that she had no knowledge of any allegation that appellant had cancelled classes. Dr. Wyant testified that she had heard the allegation from her students and other faculty, but she could not recall whether she had raised the issue with the committee.

{¶ 32} Additionally, in support of his averment that he did not permit students to forgo a mandatory research paper, appellant produced copies of two research papers purportedly submitted to him by students in the class. Dr. Morawski testified that he asked appellant to cover the class only after he could not find anyone in the area willing to teach the course. He acknowledged that he had difficulty getting instructors to cover the class because "[i]t's typically a class that most practicing social workers don't teach." (Dr. Morawski deposition, 61.) Dr. Morawski recalled that Wyant reported that her students had complained about the class research paper but that he had never spoken to appellant about the issue.

{¶ 33} In concluding that there was no genuine factual issue regarding the legitimacy of the proffered reasons for denying appellant the position, the Court of Claims stated:

> Wyant's personal experience with plaintiff's former students being inadequately prepared to perform research, coupled with plaintiff's own reference stating that plaintiff was not the best at paperwork, *do not tend to show that defendant's stated reasons for its actions toward plaintiff were false*, and that discrimination was the real reason. The only reasonable

conclusion is that defendant's reasons for not selecting plaintiff were not pretextual.

(Emphasis added.)  (Oct. 7, 2014 Decision, 10.)

{¶ 34} While the Court of Claim's statement regarding the probative value of evidence offered by the University is generally correct, the Court of Claim's conclusion overlooks the evidence presented by appellant tending to show that many of the stated reasons for denying him the position either had no basis in fact or were insufficient to justify the decision.  For example, appellant averred that in his numerous years of employment as a part-time instructor with the University, he has never been reprimanded for failing to submit "paperwork."  (Appellant's affidavit, ¶ 14.)  Appellant also produced the testimony of Dean Mosca, who understood that the new full-time instructor would spend less than 10 percent of his or her time completing administrative tasks.

{¶ 35} In addition to submitting evidence which, if believed, casts doubt as to the factual basis and sufficiency of many of the University's proffered reasons for denying him the position, appellant also produced evidence that his age was the true reason for denying him the position.  More particularly, the remarks appellant attributes to Dr. Morawski, if believed, permit an inference that age was a motivating factor for the committee.  The Court of Claims failed to even mention Dr. Morawski's comments to appellant in its discussion of pretext.

{¶ 36} In reviewing the Court of Clams' ruling on the University's motion for summary judgment, we are required to view all evidence and reasonable inferences in a light most favorable to appellant.  *Kohmescher*.  *See also Warden v. Ohio Dept. of Natural Resources*, 10th Dist. No. 13AP-137, 2014-Ohio-35, ¶ 25.  Viewing the alleged discriminatory remarks in the light most favorable to appellant and in conjunction with the other evidence of pretext produced by appellant, we find that while Dr. Morawski's remarks may not constitute direct evidence of age discrimination, such comments may provide circumstantial proof of pretext.  *Reeves* at 148 ("a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated").  In the context of summary judgment, Dr. Morawski's remarks may be probative of both pretext and discriminatory animus despite Dr. Morawski's explanation

of a plausible nondiscriminatory meaning for his remarks. *Kohmescher* at ¶ 32 (summary judgment for the employer is error where the employee presents evidence that a supervisor recommended the employer eliminate the employee's position because he was "eligible for (the) retirement window"). Accordingly, we find that appellant has sufficiently raised an issue of fact as to pretext and discriminatory animus, and we hold that the Court of Claims erred when it granted summary judgment in favor of the University as to appellant's age discrimination claim.

### 4. Relative Qualifications

{¶ 37} "Relative qualifications establish triable issues of fact as to pretext where the evidence shows that either (1) the plaintiff was a plainly superior candidate, such that no reasonable employer would have chosen the latter applicant over the former, or (2) plaintiff was as qualified * * * if not better qualified than the successful applicant, and the record contains 'other probative evidence of discrimination.' " *Bartlett v. Gates*, 421 Fed.Appx. 485, 490-91 (6th Cir.2010), quoting *Bender v. Hecht's Dept. Stores*, 455 F.3d 612, 627-28 (6th Cir.2006). *See also Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 815 (6th Cir.2011).

{¶ 38} The committee members proffered several reasons for preferring Holcomb-Hathy over appellant. For example, Dean Mosca was of the opinion that Holcomb-Hathy had more experience with agency settings, and he concluded that appellant was not a good fit for the position. Wyant testified that Holcomb-Hathy had a "more well-rounded resume."[4] (Wyant deposition, 123.) Dr. Keller stated that Holcomb-Hathy had "more field education experience" than appellant and that she was "organized and had been a supervisor and had been effective." (Keller deposition, 127.) Dr. Keller concluded that Holcomb-Hathy was a "better fit" for the position. (Keller deposition, 127.)

{¶ 39} The Court of Claims concluded that the University "presented evidence that Holcomb-Hathy met the minimum qualifications for the position." (Oct. 7, 2014 Decision, 9.) Although Dr. Morawski averred that each of the committee members

---

[4] In her deposition, Wyant testified as follows:
Q: Other than that, in terms of just their qualifications, why do you believe that Miss Holcomb was more qualified than [appellant]?
A: Because I think there was more well-rounded evidence based off of the resume.
(Wyant deposition, 123.)

believed that Holcomb-Hathy demonstrated successful teaching experience at the BSW or MSW level, it is undisputed that Holcomb-Hathy had no classroom teaching experience when she applied for the position and that she had been teaching social work at the university for just six weeks when the University interviewed her for the position sought by appellant. While it can be argued that the requirement of "demonstrated successful social work teaching experience at the BSW or MSW levels" is an imprecise standard, it is certainly reasonable to conclude from the evidence that Holcomb-Hathy did not meet this minimum requirement for the position. (July 28, 2014 Motion for Summary Judgment, Exhibit D.) *See Kimble v. Wasylyshyn*, 439 Fed.Appx. 492 (6th Cir.2011) (genuine issue of fact existed as to pretext where minority applicant met all of the stated qualifications and the Caucasion applicant chosen was not qualified at the time he applied for the position). Moreover, in reviewing the relative qualifications of the candidates to determine if there are triable issues of fact as to pretext, the question is whether the evidence supports the conclusion that appellant was "as qualified * * * if not better qualified" than Holcomb-Hathy. *Bartlett* at 491. There is no question that appellant had many more years of demonstrated successful teaching experience at the BSW or MSW level than any of the other applicants who were interviewed by the committee. Dr. Morawski admitted that when the committee offered the position to Holcomb-Hathy, her teaching had not yet been formally evaluated by the University. (Dr. Morawski deposition, 91.)

{¶ 40} With respect to the other listed qualifications for the position, appellant's affidavit provides, in relevant part, as follows:

> 9. As an LISW-S, I am licensed to perform clinical work (*i.e.*, direct patient work) without supervision. Also, I am able to supervise students and employees in the performance of such clinical work. *For a social worker who is only a Licensed Social Worker ("LSW"), supervision is outside of his/her scope of practice. An LSW is not licensed to perform clinical work without supervision.*
>
> 10. *Throughout my career, I have developed and coordinated field sites in multiple agencies and supervised more than 50 students during their internships in those field sites. I have also supervised more than 200 employees at the agencies and hospitals where I have worked.*

* * *

> 12. * * * As the Executive Director of the Trumbull County Mental Health and Recovery Board, I provided oversight for more than 30 agencies that provided social services. In this above mentioned position, I worked monthly with social workers, directors, and executive directors primarily from the Northeastern Ohio region (Lake, Cuyahoga, Lorain, Geauga, Ashtabula, Portage, Summit, and Trumbull Counties), but also statewide. *I am also professionally familiar with the social work network in these counties because I have taught social work courses for [the University] at Lakeland Community College in Kirtland, Ohio.*

(Emphasis added.)

{¶ 41} Appellant's affidavit addresses not only his own qualifications relative to the job posting, it addresses some of the reasons proffered by the committee for preferring Holcomb-Hathy. With regard to supervision, Dr. Keller acknowledged that LISW-S is a social worker's credential that "shows that they have had supervisory experience, and it shows the highest level of our profession. Also, if you are going to be supervising people in the field with field educators, it might be something that would contribute to the job." (Keller deposition, 133.) There is no dispute that appellant is so credentialed, but that Holcomb-Hathy is not. Additionally, though Wyant insisted that administrative work was a sizeable component of the new position, Dean Mosca testified that administrative duties made up less than 10 percent of the work load. (Mosca deposition, 35.)

{¶ 42} At a minimum, the evidence produced by appellant regarding his qualifications for the position relative to Holcomb-Hathy's creates a genuine issue of fact whether appellant was as qualified if not better qualified for the position than Holcomb-Hathy. Construing the evidence in appellant's favor, the University's hiring decision appears to be based, in large part, on the individual committee member's subjective belief that Holcomb-Hathy was a superior candidate to appellant rather than on specific objective evidence.

{¶ 43} Nevertheless, in addition to producing evidence that he is as qualified as Holcomb-Hathy, in order to create a triable issue of fact as to pretext, appellant is required to produce "other probative evidence of age discrimination." *Bartlett*; *Bender*;

*Provenzano.*   In this regard, appellant relies on the discriminatory remarks allegedly made to him by Dr. Morawski.  According to appellant, the remarks were made either in the context of explaining the progress of the search or in response to appellant's specific inquiry as to the reason the committee offered the position to a much younger candidate. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 356 (6th Cir.1998) ("when assessing the relevancy of an allegedly biased remark where the plaintiff presents evidence of multiple discriminatory remarks or other evidence of pretext, we do not view each discriminatory remark in isolation, but are mindful that the remarks buttress one another as well as any other pretextual evidence supporting an inference of discriminatory animus").  Dr. Morawski admits that he told appellant that the committee was focused on "mid-career" candidates.

{¶ 44}  It appears that the Court of Claims did not consider Dr. Morawski's remarks to appellant in ruling that appellant did not produce evidence to rebut the University's proffered reasons for preferring Holcomb-Hathy.  Appellant's testimony regarding Dr. Morawski's remarks about "mid-career" candidates and candidates who had not "been around for a long time," if believed, constitutes "other probative evidence of pretext." *Bartlett*; *Bender*; *Provenzano.*   When Dr. Morawski's discriminatory remarks are combined with the evidence produced by appellant regarding his qualifications for the position relative to Holcomb-Hathy, a reasonable trier of fact could conclude that the University's proffered reasons for denying him the position are merely pretextual and that the true reason for denying him the position was his age.  Accordingly, the Court of Claims erred when it granted summary judgment in the University's favor as to appellant's claim of age discrimination.

### 5.  "Honest Belief" Rule

{¶ 45} The Court of Claims relied on the "honest belief" rule in holding that appellant did not produce evidence that the proffered reasons for denying him the position were false and that age discrimination was the true reason for the decision. Under the "honest belief" rule, if the employer honestly, but mistakenly, believes in the proffered reason given for the hiring decision at issue, then the employee cannot establish the requisite pretext. *Philbrick v. Holder*, 583 Fed.Appx. 478, 482 (6th Cir.2014), citing *Smith v. Chrysler Corp.*, 155 F.3d 799, 806 (6th Cir.1998).  The "honest belief" rule arises

most frequently in cases of employee discipline, where the factual basis for the employer's decision and the quality of the employer's investigation is an issue. *See*, *e.g.*, *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 598-99 (6th Cir.2007); *Parks v. UPS Supply Chain Solutions, Inc.* 6th Cir. No. 14-5609 (Apr. 17, 2015). However, the Sixth Circuit has applied the rule in cases involving employer hiring decisions. *See*, *e.g.*, *Valentine v. Remke Markets, Inc.*, S.D. Ohio No. 1:10-cv-922 (Sept. 13, 2012); *E.E.O.C. v. AutoZone, Inc.*, W.D.Tenn. No. 00-2923 (Mar. 20, 2009).

{¶ 46} The Court of Claims held that appellant's "disagreement with the facts discussed during the committee meeting does not create a genuine issue of material fact that would defeat summary judgment as long as [the University] 'has an honest belief in its proffered nondiscriminatory reason.' " (Decision, 9-10, quoting *Michael* at 598.) As discussed above, appellant did more than simply disagree with the University's proffered reasons for denying him the position. Appellant supported his denials with corroborating evidence upon which it may be reasonably inferred that many of the proffered reasons for denying appellant the position either had no basis in fact or were insufficient to support the decision. Appellant also produced circumstantial evidence of a discriminatory animus based on age. Dr. Morawski's remarks to appellant and the inferences properly drawn therefrom create a genuine factual issue whether the members of the search committee honestly believed the proffered reasons for denying appellant the position and whether appellant's age was the true reason for its decision.

{¶ 47} Moreover, in *Valentine*, the court cautioned that the legitimacy of the articulated reason for the employment decision is subject to particularly close scrutiny where the evaluation is subjective. *Valentine*, citing *Burdine*. The *Valentine* court stated that an employer's reasons must be "clear and specific" so that the plaintiff has a full and fair opportunity to rebut them. *Id.* The ultimate issue is whether the subjective criteria of the defendant were used to disguise discriminatory action. *Conner v. State Farm Mut. Auto. Ins.* Co., 273 Fed.Appx. 438, 443 (6th Cir.2008), citing *Grano v. Dept. of Dev.*, 699 F.2d 836, 837 (6th Cir.1983).

{¶ 48} Appellant produced evidence that he was as qualified for the position if not more qualified than Holcomb-Hathy. Though the Court of Claims impliedly acknowledged that Dr. Morawski's statements constitute circumstantial evidence of a

discriminatory animus, the Court of Claims did not discuss Dr. Morawski's remarks to appellant in its application of the "honest belief" rule. Appellant's qualifications relative to Holcomb-Hathy's combined with the discriminatory remarks attributed to Dr. Morawski give rise to a genuine factual issue whether the committee's subjective reasons for preferring Holcomb-Hathy were used to disguise a discriminatory action based on age. *Valentine*; *Conner.* Thus, the Court of Claims erred when it held that the "honest belief" rule shielded the University from liability, as a matter of law.

{¶ 49} For the foregoing reasons, we find that there are genuine issues of material fact as to appellant's claim of age discrimination. Accordingly, we hold that the Court of Claims erred when it granted summary judgment in favor of appellee as to that claim.

### B. Disability Discrimination

{¶ 50} With regard to disability discrimination, R.C. 4112.02(A) makes it an unlawful discriminatory practice for any employer, because of an employee's disability, to refuse to hire or otherwise to discriminate against that person. *Ressler v. Atty. Gen.*, 10th Dist. No. 14AP-519, 2015-Ohio-777, ¶ 16. In order to establish a prima facie case of disability discrimination, the person seeking relief must demonstrate that: (1) he was disabled, (2) an adverse employment action was taken by an employer, at least in part, because the individual was disabled, and (3) the person, though disabled, can safely and substantially perform the essential functions of the job in question. *Id.*, citing *DeBolt v. Eastman Kodak Co.*, 146 Ohio App.3d 474, ¶ 39 (10th Dist.2001), citing *Columbus Civ. Serv. Comm. v. McGlone*, 82 Ohio St.3d 569, 571 (1998).

{¶ 51} Appellant has failed to produce any evidence upon which it may be inferred that the University denied him the position because he suffers from Multiple Sclerosis and Parkinson's disease. The only evidence produced by appellant in this regard is that one of appellant's references mentioned his health issues to Dr. Hyppolite and that she repeated that information during one of the committee meetings. However, unlike appellant's claim of a discriminatory animus based on age, appellant presented no other evidence upon which it could be inferred that the committee considered his disability in the decision-making process or that appellant's disability was the true reason for denying him the position. Consequently, there is no genuine issue of material fact that remains to be

litigated and the University is entitled to judgment as a mater of law as to appellant's disability discrimination claim.

{¶ 52} For the foregoing reasons, appellant's sole assignment of error is sustained in part, as it relates to appellant's claim of age discrimination, but overruled in part, as it relates to appellant's claim of disability discrimination.

## V.  CONCLUSION

{¶ 53} Having sustained appellant's sole assignment of error in part and overruled appellant's assignment of error in part, we reverse the judgment of the Court of Claims of Ohio and remand this matter for further proceedings on appellant's age discrimination claim.

*Judgment affirmed in part, reversed in part;*
*cause remanded with instructions.*

BROWN, P.J., and TYACK, J., concur.

_____