[Cite as *Ceglia v. Youngstown State Univ.*, 2016-Ohio-7235.]

| | |
|---|---|
| NICKOLA CEGLIA | Case No. 2013-00454 |
| Plaintiff | Magistrate Holly True Shaver |
| v. | <u>DECISION OF THE MAGISTRATE</u> |
| YOUNGSTOWN STATE UNIVERSITY | |
| Defendant | |

{¶1} On October 7, 2014, the court granted summary judgment in favor of defendant on plaintiff's claims of employment discrimination on the basis of age, disability, and perceived disability in violation of R.C. 4112.02.  On June 2, 2015, the Tenth District Court of Appeals reversed the judgment in part, with regard to plaintiff's claim of age discrimination, but affirmed the judgment with regard to plaintiff's claims of disability and perceived disability discrimination.  Upon remand from the Court of Appeals, the issues of liability and damages were bifurcated and the case proceeded to trial on the issue of liability on June 27-29, 2016.[1]

**BACKGROUND FACTS**

{¶2} Plaintiff, Nickola Ceglia, is a Licensed Independent Social Worker with Supervisory designation (LISW-S).  Plaintiff obtained a Bachelor of Arts Degree in Psychology in 1978, and a Master of Science Degree in Social Administration in 1980.  Plaintiff taught a variety of both bachelor and master's level classes as an adjunct professor, on a part-time basis over multiple semesters for defendant, Youngstown State University (YSU).  Although plaintiff taught intermittently for YSU from 1982-1989,

---

[1]At trial, defendant's June 24, 2016 motion in limine was GRANTED, in part, and DENIED, in part.  Plaintiff's expert witness, Attorney Glendon Karr, was permitted to testify about his knowledge of the National Association of Social Workers (NASW) code of ethics, but was not permitted to testify as to any conclusions that he reached regarding the evidence in this matter.  Defendant's August 5, 2016 motion for leave to file a long reply brief is GRANTED, instanter.

and from 1994-1998, he also held full-time positions at various other agencies and hospitals. Plaintiff was the Executive Director at Trumbull LifeLines (ADAMHS Board) from 2002 through January 2, 2009, when he took a disability retirement from that position.

{¶3} Beginning in 2009, plaintiff again taught for YSU as an adjunct professor on both the main campus and at other community colleges that are affiliated with YSU. In 2010, plaintiff taught a course known as Research Methods at the Lorain Community College Campus. In 2012, plaintiff was teaching both a graduate level class at defendant's main campus and an undergraduate level class at the Lakeland Community College campus.

**THE JOB POSTING**

{¶4} On November 7, 2012, a new position for a full-time instructor/assistant professor in the Department of Social Work at the Lakeland Community College campus was posted. The job posting states:

{¶5} "The position requires teaching undergraduate social work courses, developing social work internship sites, training field instructors, and supervising and evaluating student internship performance. The position also requires academic advising and university service."

{¶6} "Minimum Qualifications: The qualified candidate must possess a Master of Social Work degree from a CSWE accredited program, have had at least 5 years of post-MSW applied social work experience, and demonstrated successful social work teaching experience at the BSW or MSW levels. Desired Qualifications: Success at this position will benefit from applicant qualifications that include: diverse social work experience with a range of client types and practical settings, supervisory experience, prior experience serving as a social work field instructor, and demonstrated commitment to the social work profession and social work education." (Plaintiff's Exhibit 2.) The

initial application review date was stated as January 31, 2013, and the start date of the position was August 14, 2013.  *Id.*

**THE HIRING COMMITTEE**

{¶7} A hiring committee was assembled to oversee the process of filling the position.  The members of the hiring committee were Dennis Morawski, Ph.D., chair of the department of social work; Shirley Keller, Ph.D.; Melody Hyppolite, Ph.D.; and, Karla Wyant, LISW-S.  Morawski testified that he had been acquainted with plaintiff for at least 10 years, and that he, plaintiff, and David Barran, another adjunct professor, had a friendly relationship and had gone camping and kayaking together.  Morawski, Barran and plaintiff ate lunch together occasionally, and Morawski encouraged both Barran and plaintiff to apply for the position once it was posted.  Keller testified that she had known plaintiff for more than 25 years and had served as a reference for him in the past.  Hyppolite testified that she became familiar with plaintiff in 2011 but did not know him well and had no opinion on his teaching ability.

{¶8} The hiring committee underwent training on the professional faculty search process by attending a live PowerPoint presentation that was approximately one hour in length.  (Plaintiff's Exhibit 4.)  According to the training materials, after applications were received, the search chair was to provide a "Self-ID" letter to applicants by which they could choose to self-identify demographic information to be reported to YSU's Equal Opportunity and Diversity Office.  (Plaintiff's Exhibit 4, p. 3.)  The Self-ID report contained questions about applicants' gender and ethnicity, but did not include questions about applicants' ages.  (Plaintiff's Exhibit 4, p. 4; Defendant's Exhibit J, p. 5-7.)

{¶9} Nineteen individuals, including plaintiff, submitted application materials. (Defendant's Exhibit J.)  After reviewing the application materials, the search committee members individually completed an evaluation grid that contained the applicants' names and eight columns of minimum and preferred qualifications.  (Plaintiff's Exhibits 10-12.)

The search committee then met to discuss the applications as a group and determine who met the minimum qualifications. [2]

{¶10} After the group discussion, the search committee agreed on a list of the top six applicants. As of February 22, 2013, the list included plaintiff, Tami Holcomb-Hathy, Mark Woods, Michael Madry, Stephanie Bradford, and Winnifred Whittaker. (Plaintiff's Exhibit 3 to Joint Exhibit E.) The next step was to contact these applicants' references. Hyppolite was assigned to contact references for plaintiff and Bradford; Morawski was assigned to contact references for Madry and Whittaker; Keller was assigned to contact references for Woods; and, Wyant was assigned to contact references for Holcomb-Hathy. (*Id.*) Morawski asked Wyant to make the reference interview questions available to the search committee. (*Id.*) Although the application materials do not reflect applicants' ages, the materials submitted show that the top six applicants obtained their masters' degrees in the following years: plaintiff, 1980; Bradford, 1982; Whittaker, 1998; Holcomb-Hathy, 2002; Madry, 2004; Woods, 2007. (Plaintiff's Exhibits 10-12.)

**REFERENCE CHECKS**

{¶11} Plaintiff had provided three letters of reference with his application, from Vincent Stigliano, David Barran, and John Myers, respectively. (Plaintiff's Exhibits 7-9). Hyppolite testified via deposition that she successfully contacted two of plaintiff's three references; followed the list of questions that she was provided to interview the references; took notes from her interviews of the references; and, reported the

---

[2]Keller testified that she completed a grid during the search and that she placed her grid and any notes that she took thereon in Morawski's mailbox. However, Morawski testified that he could not locate Keller's materials when they were sought in discovery. Keller's grid and notes were not presented at trial.

references' comments to the search committee. (Joint Exhibit E, p. 55; Plaintiff's Exhibits 5-6 to Joint Exhibit E.)[3]

{¶12} When Hyppolite contacted John Myers, he described plaintiff as an "old school social worker." (Plaintiff's Exhibit 5 to Joint Exhibit E.) According to Hyppolite, Myers gave plaintiff a positive reference. Myers' letter of reference notes that he had known plaintiff since the late 1980s. (Plaintiff's Exhibit 9.) Hyppolite also contacted David Barran, who was teaching as an adjunct professor for YSU during the search period. Barran went to Hyppolite's office for a face-to-face interview. Hyppolite testified that Barran gave plaintiff a positive reference, although Barran stated that plaintiff was "not the best at paperwork." (Plaintiff's Exhibit 6 to Joint Exhibit E.)

**SEARCH COMMITTEE RANKINGS**

{¶13} After group discussions, the search committee ranked Madry first, Holcomb-Hathy second, and Woods third. Madry, Holcomb-Hathy, and Woods were invited for on-campus interviews which all occurred on April 10, 2013. (Defendant's Exhibit J.) The search committee testified that Madry was ranked first because he was currently performing the same duties for The Ohio State University, and the committee felt that he would already have an ideal skill set for the position. Madry was offered the position but declined it because of the low salary. The position was then offered to Holcomb-Hathy, who accepted it.

{¶14} On April 15, 2013, Morawski submitted an Equal Opportunity Compliance Report to YSU's Equal Opportunity and Diversity Office. (Plaintiff's Exhibit 21.) Under "Applicants selected for on-campus interviews" it states the following: "1. Michael Madry; 2. Tami Holcomb-Hathy; 3. Mark Woods; 4. Stephanie Bradford (declined interview, not being considered further)." Numbers 5 and 6 are blank. Under "protected

---

[3]The list of questions that the committee used appears in Plaintiff's Exhibits 17-19, although the magistrate is aware that these exhibits contain the answers from the references that Wyant was responsible for contacting.

group members who were not selected" it lists four names, one of which is Winnifred Whittaker, who was not selected because she had "no experience as a field instructor and no familiarity with regional agencies." (Plaintiff's Exhibit 21.)

{¶15} Plaintiff asserts that he was not selected for the position because of his age. Plaintiff further asserts that Holcomb-Hathy did not meet the minimum qualifications for the position, in that she did not possess demonstrated successful social work teaching experience at the BSW or MSW levels. Defendant asserts that it had legitimate, non-discriminatory reasons for selecting Holcomb-Hathy over plaintiff for the position. Plaintiff asserts that defendant's reasons are pretextual and that age discrimination is the real reason that he was not selected.

**LAW**

{¶16} R.C. 4112.02 provides, in pertinent part, that: "It shall be an unlawful discriminatory practice: (A) For any employer, because of the * * * age * * * of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." In Ohio, "federal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000(e) et seq., Title 42, U.S. Code, is generally applicable to cases involving alleged violations of R.C. Chapter 4112." *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm.*, 66 Ohio St.2d 192,196 (1981).

{¶17} To prevail in an employment discrimination case, a plaintiff must prove discriminatory intent and may establish such intent through either direct or indirect methods of proof. *Ricker v. John Deere Ins. Co.*, 133 Ohio App.3d 759, 766 (10th Dist. 1998), citing *Mauzy v. Kelly Servs., Inc.*, 75 Ohio St.3d 578, 583 (1996). The Court of Appeals previously found that certain comments attributed to Morawski when the selection process was ongoing did not constitute direct evidence of age discrimination. *Ceglia v. Youngstown State Univ.*, 10th Dist. Franklin No. 14AP-864, 2015-Ohio-2125,

¶ 23. Morawski's comments shall be considered in the analysis of plaintiff's indirect method of proof.

{¶18} In order to state a prima facie case of age discrimination by indirect evidence, plaintiff must establish that he: 1) was at least 40 years old at the time of the alleged discrimination; 2) was subjected to an adverse employment action; 3) was otherwise qualified for the position; and 4) that after plaintiff was rejected, a substantially younger applicant was selected. *Coryell v. Bank One Trust Co., N.A.*, 101 Ohio St. 3d 175, 2004-Ohio-723, paragraph 1 of the syllabus. Plaintiff testified that he was 58 years old at the time that he was not selected for the position. The evidence shows that plaintiff was qualified for the position, and that Holcomb-Hathy was 44 years old at the time that she was selected. As such, the magistrate finds that Holcomb-Hathy was substantially younger than plaintiff. Therefore, the magistrate finds that plaintiff has stated a prima facie case of age discrimination.

{¶19} "If the plaintiff establishes a prima facie case, then the burden of production shifts to the employer to present evidence of 'a legitimate, nondiscriminatory reason' for the employer's rejection of the employee." *Williams v. City of Akron*, 107 Ohio St.3d 203, 2005-Ohio-6268, ¶ 12. "If the employer meets its burden of production, 'the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" *Id.* at ¶ 14, quoting *Texas Dept. of Comm. Affairs v. Burdine,* 450 U.S. 248, 253 (1981). "To establish pretext, a plaintiff must demonstrate that the proffered reason (1) has no basis in fact, (2) did not actually motivate the employer's challenged conduct, or (3) was insufficient to warrant the challenged conduct. *Dews v. A.B. Dick Co.* 231 F.3d 1016, 1021 (6th Cir.2000). Regardless of which option is chosen, the plaintiff must produce sufficient evidence from which the trier of fact could reasonably reject the employer's explanation and infer that the employer intentionally discriminated against him. *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir.2003). A

reason cannot be proved to be a pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)." *Knepper v. Ohio State Univ.*, 10th Dist. Franklin No. 10AP-1155, 2011-Ohio-6054, ¶ 12. "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine, supra*, at 253.

## DEFENDANT'S PROFFERED LEGITIMATE, NONDISCRIMINATORY REASONS FOR NOT SELECTING PLAINTIFF

{¶20} At trial, defendant's employees testified about the reasons that plaintiff was not ranked as one of the top three candidates. As previously stated, the committee ranked Madry first, Holcomb-Hathy second, and Woods third. Bradford was ranked fourth and declined to be interviewed. Whittaker did not meet the preferred qualifications because she lacked both experience as a field instructor and familiarity with regional agencies. By process of elimination, after Bradford declined further consideration and Whittaker failed to meet the preferred qualifications, plaintiff would have moved into fourth place. Morawski testified that after Bradford declined an interview, the committee decided to interview the top three candidates only because the committee did not have an interest in interviewing plaintiff for the position. The reasons that defendant's employees have provided for not selecting plaintiff are as follows:

### 1. BOUNDARY ISSUES/PIZZA PARTIES

{¶21} One issue that was raised during the discussion of plaintiff's candidacy was that he typically hosted an end of the semester pizza party for his students in the adjunct courses that he taught. Although Keller and Morawski had attended such gatherings in the past, Wyant expressed concern because she felt that socializing with students created boundary issues between professor and student which could lead to a potential violation of the national code of ethics that social workers must follow.

Hyppolite testified that she remembers the issue being raised in the search committee and agreed that it could lead to a potential conflict. However, none of the search committee members testified that plaintiff's conduct in hosting pizza parties was a reportable offense under the NASW code of ethics. Wyant testified credibly that she herself would not take students out for food as a social work professional, however, the magistrate finds that Morawski and Keller's attendance at these functions shows that the boundary issue was more of a concern to Wyant than to other members of the search committee. The evidence does show, however, that the issue was discussed during the search committee meetings, and that plaintiff did host social gatherings for his class.

## 2. LETTERS OF REFERENCE

{¶22} As stated earlier, plaintiff submitted three letters of reference, and Hyppolite contacted two of his three references. Wyant testified that in comparison to other candidates, plaintiff's letters of reference were more personal than professional. Morawski and Keller testified that plaintiff's letters of reference were sufficient. Keller testified that she was familiar with all three of plaintiff's references and that she respected them in their professional capacities. Hyppolite's notes from her interviews of plaintiff's references show that they both gave plaintiff a positive reference. However, John Myers did make comments that Wyant felt were not relevant to the position, including that plaintiff was a great animal lover, was the son of aging parents, and had a very strong personal religious faith. All three of plaintiff's references describe plaintiff as a friend. One of Holcomb-Hathy's references also refers to her as a "dear friend." Hyppolite testified that she recalled a discussion that plaintiff's references seemed more personal than professional, but it is clear to the magistrate that Wyant's opinion on this matter was not shared by the other three search committee members.

### 3. PAPERWORK ISSUE

{¶23} The more significant issue that was apparent from the interviews of plaintiff's references was that Barran told Hyppolite that plaintiff was "not the best at paperwork." (Plaintiff's Exhibit 6 to Joint Exhibit E.) All of the committee members testified that this comment stood out to them as a potential problem. Wyant testified that the position that plaintiff applied for was very similar to her own position at the Lorain campus. The duties included teaching two classes each semester, coordinating internships, advising students, writing reports, keeping track of rosters, grading papers, responding to multiple emails, and making sure graduation requirements were being met. Wyant testified that staying organized and up to date with paperwork was a key component of the job, and that she was concerned when Hyppolite reported to the committee that Barran had stated that plaintiff was not the best at paperwork.

{¶24} Keller testified that when Hyppolite reported that Barran had stated that plaintiff was not the best at paperwork, it had a "huge" impact on plaintiff's candidacy, because paperwork and organizational skills were a crucial part of the job. Keller testified that she did not doubt the accuracy of Hyppolite's report of what plaintiff's references stated during their interviews.

### 4. RESEARCH METHODS CLASS, SPRING 2010

{¶25} Morawski testified that he had asked plaintiff to teach a course known as Research Methods in spring 2010, at the Lorain campus, which is where Wyant also taught. According to Morawski, it was difficult to find someone who was willing to teach that particular class, and Morawski provided plaintiff with a syllabus and materials that Morawski himself had used in the past.

{¶26} Wyant testified that she had received complaints about plaintiff's teaching in 2010, when students that he had taught were taking a class from her in the fall.

According to Wyant, it was evident to her that the students were struggling in her course and were having difficulty doing research. In her experience, other students who had not been taught Research Methods by plaintiff did not experience the same difficulty as his prior students. Wyant testified that she complained to Morawski after her experience with having to re-teach students how to perform research, and she asked Morawski not to hire plaintiff to teach Research Methods again. Morawski corroborated Wyant's testimony in that he acknowledged that Wyant had complained to him about her students not being adequately prepared for her class after having taken plaintiff's Research Methods course. Morawski continued to ask plaintiff to teach other social work courses but not Research Methods. Morawski also testified that he never personally informed plaintiff of Wyant's complaints. Wyant's evaluation grid of plaintiff also states: "Taught Research Methods in Lorain Spring 2010 – problems reported by students regarding assignments/ attained grants." Wyant has two stars next to this note that she wrote on her evaluation grid, and she personally ranked plaintiff 6th. (Plaintiff's Exhibit 11.)

{¶27} Hyppolite testified: "the only thing I remember of the discussion around why [plaintiff] was ranked where he was, was around the – his performance in his role as an adjunct; and there was concern if his role as an adjunct was unsatisfactory in people's opinions that there was concern about how he would perform in a role that had more responsibilities than as an adjunct." (Joint Exhibit E, p. 117-118.)

{¶28} Other criticisms of plaintiff's teaching performance that were raised at the search committee meetings were allegations that he gave easy grades, that he ended classes early, and that he either did not require a research paper or that he omitted some of the requirements from the Research Methods course. All of these issues were raised by Wyant, due to her personal experience with her own students. At trial, the parties went into great detail in comparing research papers that had been submitted by plaintiff's students. In summary, the testimony showed that although plaintiff did not

eliminate the requirement of a research paper, his students were allowed to write the paper in small groups instead of individually.

{¶29} Upon review of the testimony and evidence presented at trial, the magistrate finds that defendant has met its burden to produce evidence of a legitimate, nondiscriminatory reason for its rejection of plaintiff. Specifically, the magistrate finds that defendant produced evidence that Barran reported to Hyppolite that plaintiff was "not the best at paperwork," and that Wyant had complained to Morawski in 2010 that her students who had taken plaintiff's Research Methods class were not prepared for her class, and that Wyant recommended that Morawski not hire plaintiff to teach that particular class in the future.

**PLAINTIFF'S ARGUMENTS ABOUT PRETEXT**

**1.  VERACITY AND SUFFICIENCY OF DEFENDANT'S PROFFERED REASONS**

{¶30} Plaintiff disputes the veracity and sufficiency of defendant's proffered reasons for rejecting him. With regard to the pizza parties/boundary issues, the magistrate agrees that the fact that Keller and Morawski had attended the events in the past, and the fact that neither one of them testified that they were concerned with plaintiff's behavior in this regard persuades the magistrate to find that the pizza parties, standing alone, were insufficient to warrant the rejection of plaintiff's candidacy. In addition, the proffered reason that plaintiff's letters of reference were too personal and not professional did not actually motivate Keller or Morawski to reject plaintiff.

{¶31} With regard to the veracity of whether Barran stated that plaintiff was not the best at paperwork, Barran testified that when he met with Hyppolite, she told him that plaintiff's references were "too positive" and that she needed something negative to say about him. Although Barran admitted that he stated that plaintiff had a reputation for not liking paperwork, Barran testified that he also told Hyppolite that even though plaintiff did not like paperwork, he had overcome his dislike for it through the use of technology. The magistrate finds that Barran's testimony was credible with regard to

the friendly relationship that he, plaintiff, and Morawski had shared over the years. However, the magistrate further finds that Barran's testimony that Hyppolite asked him only for negative information about plaintiff was neither credible nor supported by the evidence. Specifically, Hyppolite testified that she used the standard list of questions that she was given in the search committee to question the references that she contacted. In addition, Hyppolite's notes from her interviews with plaintiff's references are numbered to correspond with the list of questions that was provided. Lastly, Hyppolite's notes specifically reflect the words "not the best at paperwork." (Plaintiff's Exhibit 6 to Joint Exhibit E.) Although Barran may regret that he made that statement to Hyppolite, the evidence shows that he, in fact, made the statement and that it negatively impacted plaintiff's candidacy.

{¶32} With regard to the veracity of whether students complained to Wyant about plaintiff's performance in the Research Methods class in 2010, plaintiff asserts that he was never reprimanded or given a bad evaluation for any of the classes that he taught at YSU. However, the evidence also shows that adjunct professors were not formally evaluated by faculty members, and that Morawski did not ask plaintiff to teach the Research Methods course again after plaintiff taught it in 2010. In addition, Wyant's evaluation grid, which was written in February 2013, shows that she specifically remembered that students reported problems with plaintiff's teaching the Research Methods course. Morawski's testimony also corroborated the fact that Wyant had complained to him in 2010 about plaintiff's performance in the Research Methods class. Upon review, the magistrate finds that plaintiff has failed to prove by a preponderance of the evidence that defendant's legitimate, non-discriminatory reasons of Barran's comments and Wyant's experience of her students being unprepared for her class after having had plaintiff as an instructor were a pretext for age discrimination.

## 2. ASSERTION THAT HOLCOMB-HATHY DID NOT MEET MINIMUM QUALIFICATIONS

{¶33} Plaintiff also asserts that Holcomb-Hathy did not meet the minimum qualification of having demonstrated successful social work teaching experience at the BSW or MSW levels when the position was posted. The evidence shows that in 2012, Holcomb-Hathy had been hired to teach a course at YSU as an adjunct professor at the Lakeland campus to begin in January 2013, and that she had not taught at the university level prior to that position. However, Holcomb-Hathy applied for the position on February 7, 2013, after she had begun the adjunct teaching position for YSU. (Defendant's Exhibit J, p. 6.) The CV that Holcomb-Hathy submitted with her application materials includes that teaching position. Both Wyant's and Hyppolite's evaluation grids list Holcomb-Hathy's adjunct teaching position as meeting the minimum requirement. (Plaintiff's Exhibits 11, 12.) Hyppolite acknowledged that Holcomb-Hathy's weakness as a candidate was her teaching experience, in that she had officially been teaching at YSU for a little over a month. However, both Wyant and Morawski testified that the committee felt that Holcomb-Hathy met the teaching requirement based upon positive feedback from the course that she had started teaching in 2013, and her experience of training professional and community groups locally and nationally, which is reflected on her CV. (Plaintiff's Exhibit 14, p. 3.) The committee members testified that Holcomb-Hathy was ranked in the top six because the committee found that her teaching experience was acceptable. The committee testified that Holcomb-Hathy's strengths were that she had quite a bit of practice and administrative experience, and that she had multiple agency contacts in the Lake County community, evident from her CV, which would assist with establishing field placements. Keller testified that Holcomb-Hathy was ranked higher than plaintiff despite plaintiff's lengthy teaching experience because Holcomb-Hathy's references described her as having good organizational skills and because of her contacts with regional social work sites in the Lake County area. Upon review of the evidence presented at trial, the magistrate finds that Holcomb-Hathy met the minimum qualifications for the position.

### 3. PROCEDURAL IRREGULARITIES

{¶34} Plaintiff also asserts that the search committee's unwillingness to interview him once he moved into fourth place is evidence of discriminatory animus based upon his age. However, based upon the evidence presented at trial, the magistrate finds that plaintiff was not interviewed because the search committee preferred the top three candidates based upon their application materials, and the search committee did not desire to interview plaintiff based upon his past performance in the Research Methods course and their concern that his organizational skills were not sufficient for the position. In addition, Hyppolite testified that she has served on four search committees, and that in her experience, usually the top three candidates are invited for on-campus interviews. Morawski also testified credibly that there was no discussion or interest in interviewing plaintiff after Bradford declined an interview.

### 4. MORAWSKI'S COMMENTS

{¶35} The Court of Appeals found that although certain remarks that plaintiff alleges that Morawski made to him were not direct evidence of age discrimination, his comments may provide circumstantial proof of pretext and discriminatory animus. *Ceglia, supra*, ¶ 36.

{¶36} In his affidavit in opposition to summary judgment, plaintiff averred that on April 3, 2013, he asked Morawski about his interview status for the position, and Morawski responded that the hiring committee was focused on "mid-career" candidates. *Id*. paragraph 18. Plaintiff argues that the term "mid-career" excluded him from consideration because he was a "58-year old, late-career professional who had been working in the field of social work for more than 30 years." *Id*. Plaintiff also stated in his affidavit that in early May 2013, after the position had been filled, he asked Morawski why the position was given to a much younger candidate, and that Morawski responded

that "the hiring committee was focused on a 'mid-career' candidate and [he] informed [plaintiff] that the hiring committee 'did not want someone who had been around for a long time." *Id.*

{¶37} At trial, plaintiff testified that during the hiring process, he spoke to Morawski at lunch and asked about the status of his application. According to plaintiff, in that conversation, Morawski commented that the committee was "very impressed with some mid-career candidates." Plaintiff testified that during this same conversation, Morawski stated that he was surprised at the number of qualified candidates who had applied, mentioned that some applicants were from out of town, and asked whether plaintiff would be available for a Skype interview, because if the committee interviewed one candidate via Skype, all interviews would be done via Skype. Plaintiff testified that Morawski also told him that they had a very good candidate who was currently working at The Ohio State University.

{¶38} After plaintiff learned that the position was filled, and he had not been asked for an interview, plaintiff approached Morawski again. According to plaintiff, he asked Morawski, "What happened here?" In response, Morawski said, "We had a lot of good candidates and this is who they picked." Then plaintiff said something like, "she has this much teaching experience" (indicating a small amount with his fingers). Morawski responded that it was the committee's decision. Plaintiff further testified that Morawski told him that there were a lot of mid-career, experienced candidates, and that the committee prefers to hire people outside of the YSU domain who they don't know and are basically unknown entities.

{¶39} Morawski testified that when plaintiff approached him the first time, Morawski felt that he was not permitted to share information during the pending search, and that he was not comfortable talking to plaintiff about the search process. Morawski explained that when he mentioned "mid-career candidates," Morawski was including plaintiff in that category, because the committee had narrowed the pool to six

candidates, including plaintiff. Morawski testified that he was trying to tell plaintiff that there were other qualified candidates who were not "rookies" to social work. In fact, during this conversation, Morawski also asked plaintiff if he would be available to interview via Skype if he were selected for an interview.

{¶40} During the second conversation, Morawski testified that plaintiff approached him outside of his office, and he was caught off-guard. Morawski testified that by plaintiff's demeanor, it was apparent that plaintiff was disappointed. Plaintiff asked Morawski, "What happened?" Morawski stated, "Nick, you were one of many mid-career people who were well qualified for this job." According to Morawski, the term "mid-career" was not a comment about age, but rather, an attempt to explain that both plaintiff and many other applicants were qualified for the position. Morawski denied saying words to the effect that the committee was not interested in people who had been around for a long time.

{¶41} Plaintiff admitted that Morawski never mentioned that any of the candidates were young, never made comments to plaintiff about any of the candidates' ages, and never told plaintiff that he was too old for the position. At the time of the search, Morawski was 57, and Keller was 66 years old.

{¶42} Upon review of the testimony and evidence presented at trial, the magistrate finds that plaintiff has failed to prove by a preponderance of evidence that the reasons offered by defendant were a pretext for age discrimination. The evidence shows that 19 individuals applied for the position, that six, including plaintiff, were considered as top-tier candidates, and that the standard process was followed to contact those six candidates' references. After the references were contacted, the six top-tier applicants were ranked by the group. The issues discussed by the search committee were based upon the candidates' application materials and the references' comments. Defendant's decision to rank plaintiff below the top three candidates was based upon comments made by his references and complaints about his teaching

performance. Although it is clear that plaintiff was qualified for the position, the magistrate finds that Madry, Holcomb-Hathy, and Woods also met the minimum qualifications for the position, and that each candidate possessed different strengths and weaknesses which were considered in good faith by the search committee. The magistrate finds that plaintiff has failed to prove that Barran did not state that plaintiff was not the best at paperwork, that Barran's comment did not actually motivate the committee to rank plaintiff below the top three candidates, or that Barran's comment was insufficient to warrant plaintiff's ranking. The magistrate further finds that plaintiff has failed to prove that Wyant's experience with her students being unprepared for her class after having had plaintiff as a professor had no basis in fact, did not actually motivate Wyant to complain about his teaching ability to Morawski, or was insufficient for the committee to consider when deciding to hire a full-time employee. Furthermore, the magistrate finds that Morawski's mid-career comments to plaintiff are not evidence of age bias. Both Morawski and plaintiff testified that Morawski encouraged plaintiff to apply for the position. The magistrate also finds that Morawski and Keller were supportive of plaintiff throughout his career at YSU, and the evidence does not show that they or any other members of the search committee harbored any discriminatory animus against plaintiff based upon his age. The magistrate finds that plaintiff has failed to meet his burden of proof that his age was the reason that he was not selected. The committee testified credibly that Madry was ranked first because of his similar job responsibilities at The Ohio State University, and that Holcomb-Hathy was ranked second because of her agency contacts and other relevant experience. Plaintiff has failed to prove by a preponderance of the evidence that defendant's failure to hire him for the position was based upon his age. Therefore, the magistrate recommends judgment in favor of defendant.[4]

---

{¶43} *A party may file written objections to the magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(i).  If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed.  A party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion within 14 days of the filing of the decision, as required by Civ.R. 53(D)(3)(b).*

_____
HOLLY TRUE SHAVER
Magistrate

cc:

Matthew M. Ries                         Lindsey M. Grant
Patrick K. Wilson                       Velda K. Hofacker
108 Main Avenue, SW, Suite 500          Assistant Attorneys General
Warren, Ohio 44481                      150 East Gay Street, 18th Floor
                                        Columbus, Ohio 43215-3130

**Filed September 20, 2016**
**Sent To S.C. Reporter 10/6/16**

_____

[4]Although Dean Joseph Mosca testified at trial, the magistrate considered his testimony cumulative, and did not refer to it in this decision.  In addition, the magistrate finds that the testimony of Glendon Karr about the NASW code of ethics was not particularly germane to this decision in that the magistrate finds that plaintiff's conduct of having pizza parties at the end of a semester with his students did not rise to a reportable violation of the NASW code of ethics.